**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Thaeeb BAY, Defendant-Appellant.**

**No. 83–1297.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 8, 1984.

Decided Dec. 5, 1984.

As Amended on Denial of Rehearing
March 1, 1985.

Sneed, Circuit Judge, filed an opinion concurring in part and dissenting in part.

Martin F. Healey, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

J. Frank McCabe, San Francisco, Cal., for defendant-appellant.

Before BROWNING, Chief Judge, DU-NIWAY, and SNEED, Circuit Judges.

DUNIWAY, Circuit Judge:

Bay appeals from his conviction on three counts of bank robbery. He claims error in the trial court's rulings: (1) refusing to allow him to exhibit his tattooed hands to the jury without taking the stand and being cross-examined, (2) preventing him from impeaching a key prosecution witness with a past forgery conviction, and (3) rejecting various requested jury instructions.

## FACTS.

An unarmed man robbed a bank in Oakland, California, of about $1100 on September 20, 1982, Count Four. An armed man robbed a savings and loan in El Cerrito of about $3000 on April 18, 1983, Count Two. Two armed men robbed a bank in Orinda of about $3000 on June 24, 1983, Count One. On that occasion, a witness saw a third man in a car parked outside the bank. A few days later, one Yvonne James told the FBI that she had driven Bay and two other men from Orinda back to Oakland after a bank robbery on June 24. Bay was arrested. At police lineups on June 30, 1983, witnesses from each of the three robberies identified Bay. A jury convicted him on the three counts, and the court sentenced him to terms of 20 years on Count One, 10 years consecutive on Count Two and 5 years probation on Count Four, to commence upon release. The trial court denied Bay's motion for a new trial, and he appeals.

## I. EXHIBITION OF TATTOOED HANDS.

■ At the close of the prosecution's case, Bay's counsel asked to be permitted to have Bay show to the jury the tattoos on the backs of his hands. Counsel wished to argue in closing that the failure of the eyewitnesses to notice or mention such conspicuous tattoos raised a reasonable doubt about their identifications of Bay. The court ruled that such an exhibition would be testimony, and therefore that Bay would have to take the witness stand and subject himself to cross-examination. Bay did not take the stand and so was not permitted to exhibit the tattoos. This was error.

■ Bay argues, and the government concedes, that a display of hands is non-testimonial. This has been repeatedly held in cases in which the government seeks to compel a defendant to show various types of physical characteristics to the jury. The cases held that this does not infringe the Fifth Amendment privilege against self-incrimination. See United States v. Dionisio, 1973, 410 U.S. 1, 5–6, 93 S.Ct. 764, 767, 35 L.Ed.2d 67; Schmerber v. California, 1966, 384 U.S. 757, 764, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908; Holt v. United States, 1910, 218 U.S. 245, 252–53, 31 S.Ct. 2, 6, 54 L.Ed. 1021; United States v. Valenzuela, 9 Cir., 1983, 722 F.2d 1431, 1433. If this can be compelled by the government when it is to the government's advantage, surely the defendant can make the same showing without taking the stand, when such a showing is to his advantage. We have been cited no case that so holds, but we are convinced that this is one case in which it is proper to apply the "sauce for the goose is sauce for the gander" maxim. Physical characteristics relevant to most eyewitness identifications (such as size, gender, skin and hair color, special deformities, and facial features) are apparent, and can be referred to in argument, without a defendant having to take the stand and subject himself to cross-examination and impeachment. Courtroom geography, which apparently prevented the jury from seeing Bay's hands, should not determine whether Bay had to take the stand to present potentially exculpatory physical evidence.

On motion for a new trial, the judge said that the testimony at the trial "pertained to defendant's facial features. The testimony did not address the issue of defendant's hands." Not so. Danielle Savin, the teller at the bank that was robbed on June 24, 1983, (Count I) identified Bay at a police station lineup and at trial. At trial, she described the robber's clothing, hair, and gold-rimmed front tooth. She said that she identified Bay as the robber primarily by his face. But she also testified about the robber's hands:

A. I did see his hands.

   ·    ·    ·    ·    ·

Q. Do you remember anything unusual about his hands?
A. I know he had long fingers.
Q. That's all you recall?
A. Yes. I don't remember no jewelry.
Q. Excuse me?
A. No jewelry, just long thin fingers.

R.T. II at 39–40. Bay's counsel was wise enough not to ask the next question about tattoos. He left that for the jury.

Because the court would have allowed Bay to present the clearly relevant evidence of his tattoos only at the price of forgoing his Fifth Amendment right not to testify, we must apply the constitutional error standard of *Chapman v. California,* 1967, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705. Whether Ms. Savin's failure to notice such tattoos on the robber's hands undercuts her identification of Bay as the robber is a question for the jury to decide, but we cannot conclude that the error was harmless beyond a reasonable doubt. We therefore must reverse Bay's conviction on Count I.

■ In cross examining the witnesses who identified Bay as a robber under Counts II and IV, his counsel did not ask about Bay's hands. The government argues that therefore there was no foundation for displaying the hands in response to those counts. The question is fairly close, but we think that the display would be relevant to those counts as well.

The identification of Bay was somewhat tenuous. Four of the eight eyewitnesses who testified could not identify him, two as to Count I, one as to Count II, and one as to Count IV.

The eyewitness testimony was the only evidence against Bay on Counts II and IV. The witnesses were close to him, saw him do things with his hands, and handed him money. As to Count II, the witness Davis said that the robber put a briefcase on her counter in front of her, opened it, took out a gun, and pointed it at her, two feet away. Near the close of her identification testimony, she was asked: "Is there anything else that you remember about his appearance?" She mentioned a gold tooth, but not tattoos on his hands. Yet she certainly had his hands in view, on the counter, two feet in front of her. It would be legitimate for Bay's counsel, having displayed Bay's hands, to argue that Davis never mentioned the tattoos, and had therefore identified the wrong man.

As to Count IV, the teller witness Flynn said that the robber walked up to her station, opened his wallet, took out a note, and handed it to her. He was one to two feet away. She was asked: "Anything particular that you remember about his appearance." She mentioned his face, and described it, but did not mention his hands. The witness Brouch saw the robber pass a note to Flynn, and got close enough to read it. She was one to two feet from the robber and had a good view. She answered "his face," but did not mention his hands, when asked: "Is there anything particular that you remember about his appearance?" The argument that, if Bay were the robber, the witness would have noticed the tattoos, would again have been legitimate.

In its petition for a rehearing, the government argues that there was no foundation for showing the tattoos. Because the court ruled that the exhibition of the tattoos was testimonial, neither government counsel nor the judge raised lack of a foundation for the display of the tattoos as a basis for the court's ruling. No objection was made that there was no showing that the tattoos were on the defendant's hands at the time of the robberies. That objection can be raised at a new trial, but is not available on this appeal. A foundation must be laid for the introduction of evidence, but if, when evidence is offered, there is no objection based on lack of a foundation, the point is not available on appeal. *United States v. Valdivia,* 9 Cir., 1973, 492 F.2d 199, 208. *See also* F.R.Evid. 103(a)(1); 1 Wigmore on Evidence, § 18 (Tiller's Revision, Vol. I), at 818 "[No] objection at all will be heard when made for the first time in the court of appeal." Under the circumstances in this case, we do not think that it would be proper to affirm the judgment on the ground that a foundation had not been laid.

The cases cited by the government in its petition for a rehearing are not to the contrary. In *United States v. Stearns,* 9 Cir., 1977, 550 F.2d 1167, 1169–72, and *United States v. May,* 9 Cir., 1980, 622 F.2d 1000, 1007, objection based on lack of foundation was made at trial. In *United States v. Oaxaca,* 9 Cir., 1978, 569 F.2d 518, 525, it does not appear whether an objection based on lack of foundation was made at trial, presumably because we held, on appeal, that there was a sufficient foundation.

*Commonwealth v. Happnie,* Mass.App. 1975, 326 N.E.2d 15, 29, involved a tattoo on the defendant's right hand. The trial judge declined to permit its exhibition to the jury on two grounds, (1) that the defendant refused to take the stand, and (2) that there was no showing that the defendant had the tattoo at the time of the offense. The appellate court affirmed on both grounds. We disagree with the first ground. The second ground is not available here, for the reasons that we have just stated. *People v. Wong,* 1973, 35 Cal.

App.3d 812, 835, 111 Cal.Rptr. 314, is a case in which the court upheld denial of a request that defendant be permitted to show his arms to the jury, in May, 1971, as proof that they bore no needle marks in June, 1970. Needle marks can heal and disappear; tattoos are more permanent.

*People v. Shields*, App.Div.N.Y.1981, 438 N.Y.Supp.2d 885, 886–87, involved a scar on defendant's abdomen, and the court reversed because the trial court would not let the defendant show the jury the scar, laying a foundation with the testimony of his sister that he had the scar before the time of the offense. The court there held that it was error to require the defendant to take the stand as a condition to showing the jury the scar. In that respect, the case is closely in point here and supports our decision. *Brown v. United States*, 10 Cir., 1966, 356 F.2d 230, 233–34, also involved an offer by defendant to exhibit a scar on his body. The Court of Appeals affirmed a denial of the offer, on the dual grounds that the defendant did not take the stand, and no proper foundation was laid. We cannot tell from the opinion whether lack of foundation was raised at the trial. If it was not, we would decline to follow that case.

▪ Finally, the government urges us to affirm for lack of foundation for the offer of the tattoos, invoking the rule that we "must affirm if the result is correct, although the lower court relied upon a wrong ground or gave a wrong reason," *United States v. Best*, 9 Cir., 1978, 573 F.2d 1095, 1100–01. *See also Dandridge v. Williams*, 1970, 397 U.S. 472, 475, n. 6; *United States v. Honigman*, 9 Cir., 980, 633 F.2d 1336, 1338; *United States v. Bacall*, 9 Cir., 1971, 433 F.2d 1050, 1055–56. However, in none of these cases were we called upon to affirm the exclusion of evidence on grounds never raised by the appellee before the trial court or by the trial judge. To do so would run counter to the established practice of trial courts and trial counsel: evidence submitted without objection is properly in the case. If it is excluded on a wrong ground, it would be improper to uphold the exclusion on a ground not raised at trial, especially where the party offering the evidence could have met the objection had it been made, as in *People v. Shields, supra*.

Under these circumstances, we conclude that the judgment must be reversed as to Counts II and IV as well as Count I.

## II. EVIDENCE OF PRIOR CONVICTION.

▪ The trial court would not permit Bay to cross-examine Yvonne James, who testified that she drove Bay and two confederates back to Oakland from Orinda after the robbery on June 24, 1983, about her 1978 forgery conviction, ruling *sua sponte* that the conviction was "too far removed" in time. Evidence of a conviction of forgery, which is a crime involving dishonesty and false statement, is mandatorily admissible for impeachment purposes. *United States v. Field*, 9 Cir., 1980, 625 F.2d 862, 871; *see United States v. Glenn*, 9 Cir., 1982, 667 F.2d 1269, 1272–73; Fed.R.Evid. 609(a)(2). Evidence of a conviction more than ten years old is presumptively inadmissible as too remote. Fed.R.Evid. 609(b). James' seven year old conviction was admissible, and the court acted outside the scope of its discretion in excluding it.

The government did not object to the admission of the evidence at trial, and concedes that the trial court erred, but argues that the error was harmless. Because James testified only about the Count I robbery, for which we reverse Bay's conviction on another ground, we need not decide whether the erroneous exclusion of evidence of James' forgery conviction was harmless. It should not be repeated.

## III. JURY INSTRUCTIONS.

▪ Bay argues that the trial court erred in rejecting requested jury instructions on informer, addict-informer, accomplice, and immunized witness testimony; eyewitness identifications; failure of a defendant to testify, number of witnesses presented by each side, and rejection of uncontradicted testimony. The formulation of jury instructions is in the trial court's discretion, so long as the issues presented are fairly and adequately covered. *United States v. Smith*, 9 Cir., 1984, 735 F.2d 1196, 1198. We must review jury instructions as a whole and in the context of the overall charge. *Branch v. Cupp*, 9 Cir., 1984, 736 F.2d 533, 537. In context, the rejection of the various proffered instructions, individually or cumulatively, did not deprive Bay of the opportunity to present his theory of the case. *See United States v. Marabelles*, 9 Cir., 1984, 724 F.2d 1374, 1383. The extensive cross-examinations of James and the eyewitnesses, Bay's arguments to the jury and the actual in-

structions provided a fair trial by a properly and adequately instructed jury.

The judgment is REVERSED.

SNEED, Circuit Judge, concurring in part and dissenting in part:

I concur in the opinion of the majority except with respect to the reversals of Counts II and IV. Any error pertinent to those counts was harmless. As the majority points out, no eyewitness was asked anything about or addressed the issue of the defendant's hands. It was raised by Bay's counsel only at the close of the prosecution's case, and then only as to Ms. Savin, after having cross-examined all eyewitnesses. Under these circumstances, I do not think that allowing Bay to exhibit his hands to the jury would have refuted the eyewitness identification of the bank tellers who testified at the trial, except perhaps with respect to Ms. Savin. In any event, a cold transcript cannot reveal the extent to which any disfigurement of Bay's hands might have been visible to the tellers who gave eyewitness identification.

The majority finds the stain of one clear error wider than would I.

The petition for a rehearing is denied. Judge Sneed would grant the petition for a rehearing.