**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Thaeeb BAY, Defendant-Appellant.**

No. 83–1297.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 8, 1984.

Decided December 5, 1984.

Modified March 1, 1985.
and June 12, 1985.

Martin F. Healey, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

J. Frank McCabe, San Francisco, Cal., for defendant-appellant.

Before BROWNING, Chief Judge, DUNIWAY and SNEED, Circuit Judges.

## SECOND MODIFIED OPINION

DUNIWAY, Circuit Judge:

The Petition for Rehearing of the modified opinion is granted in part. The following opinion is substituted for the modified opinion, 748 F.2d 1344.

Bay appeals from his conviction on three counts of bank robbery. He claims error in the trial court's rulings: (1) refusing to allow him to exhibit his tattooed hands to the jury without taking the stand and being cross-examined, (2) preventing him from impeaching a key prosecution witness with a past forgery conviction, and (3) rejecting various requested jury instructions.

### FACTS

An unarmed man robbed a bank in Oakland, California, of about $1100 on September 20, 1982, Court Four. An armed man robbed a savings and loan in El Cerrito of about $3000 on April 18, 1983, Count Two. Two armed men robbed a bank in Orinda of about $3000 on June 24, 1983, Count One. On that occasion, a witness saw a third man in a car parked outside the bank. A few days later, one Yvonne James told the FBI that she had driven Bay and two other men from Orinda back to Oakland after a bank robbery on June 24. Bay was arrested. At police lineups on June 30, 1983, witnesses from each of the three robberies identified Bay. A jury convicted him on the three counts, and the court sentenced him to terms of 20 years on Count One, 10 years consecutive on Count Two and 5 years probation on Count Four, to commence upon release. The trial court denied Bay's motion for a new trial, and he appeals.

## I. EXHIBITION OF TATTOOED HANDS.

At the close of the prosecution's case, Bay's counsel asked to be permitted to have Bay show to the jury the tattoos on the backs of his hands. Counsel wished to argue in closing that the failure of the eyewitnesses to notice or mention such conspicuous tattoos raised a reasonable doubt about their identifications of Bay. The court ruled that such an exhibition would be testimony, and therefore that Bay would have to take the witness stand and subject himself to cross-examination. Bay did not take the stand and was not permitted to exhibit the tattoos. This was error.

Bay argues, and the government concedes, that a display of hands is non-testimonial. This has been repeatedly held in cases in which the government seeks to compel a defendant to show various types of physical characteristics to the jury. The cases hold that this does not infringe the Fifth Amendment privilege against self-incrimination. *See United States v. Dionisio,* 1973, 410 U.S. 1, 5–6, 93 S.Ct. 764, 767, 35 L.Ed.2d 67; *Schmerber v. California,* 1966, 384 U.S. 757, 764, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908; *Holt v. United States,* 1910, 218 U.S. 245, 252–53, 31 S.Ct. 2, 6, 54 L.Ed. 1021; *United States v. Valenzuela,* 9 Cir., 1983, 722 F.2d 1431, 1433. If this can be compelled by the government when it is to the government's advantage, surely the defendant can make the same showing without taking the stand, when such a showing is to his advantage. We have been cited no case that so holds, but we are convinced that this is one case in which it is proper to apply the "sauce for the goose is sauce for the gander" maxim. Physical characteristics relevant to most eyewitness identifications (such as size, gender, skin and hair color, special deformities, and fa-

cial features) are apparent, and can be referred to in argument, without a defendant having to take the stand and subject himself to cross-examination and impeachment. Courtroom geography, which apparently prevented the jury from seeing Bay's hands, should not determine whether Bay had to take the stand to present potentially exculpatory physical evidence.

On motion for a new trial, the judge said that the testimony at trial "pertained to defendant's facial features. The testimony did not address the issue of defendant's hands." Not so. Daniella Savin, the teller at the bank that was robbed on June 24, 1983, (Count I) identified Bay at a police station lineup and at trial. At trial, she described the robber's clothing, hair, and gold-rimmed front tooth. She said that she identified Bay as the robber primarily by his face. But she also testified about the robber's hands:

A: I did see his hands.

Q: Do you remember anything unusual about his hands?

A: I know he had long fingers.

Q: That's all you recall?

A: Yes. I don't remember no jewelry.

Q: Excuse me?

A: No jewelry, just long thin fingers.

R.T. II at 39–40. Bay's counsel was wise enough not to ask the next question about tattoos. He left that for the jury.

Because the court would have allowed Bay to present the clearly relevant evidence of his tattoos only at the price of forgoing his Fifth Amendment right not to testify, we must apply the constitutional error standard of *Chapman v. California*, 1967, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705. Whether Ms. Savin's failure to notice such tattoos on the robber's hands undercuts her identification of Bay as the robber is a question for the jury to decide, but we cannot conclude that the error was harmless beyond a reasonable doubt.

In cross examining the witnesses who identified Bay as a robber under Counts II and IV, his counsel did not ask about Bay's hands. The government argues that therefore there was no foundation for displaying the hands in response to those counts. The question is fairly close, but we think that the display would be relevant to those counts as well.

The identification of Bay was somewhat tenuous. Four of the eight eyewitnesses who testified could not identify him, two as to Count I, one as to Count II, and one as to Count IV.

The eyewitness testimony was the only evidence against Bay on Counts II and IV. The witnesses were close to him, saw him do things with his hands, and handed him money. As to Count II, the witness Davis said that the robber put a brief case on her counter in front of her, opened it, took out a gun, and pointed it at her, two feet away. Near the close of her identification testimony, she was asked: "Is there anything else that you remember about his appearance?" She mentioned a gold tooth, but not tattoos on his hands. Yet she certainly had his hands in view, on the counter, two feet in front of her. It would be legitimate for Bay's counsel, having displayed Bay's hands, to argue that Davis never mentioned the tattoos, and had therefore identified the wrong man.

As to Count IV, the teller witness Flynn said that the robber walked up to her station, opened his wallet, took out a note, and handed it to her. He was one to two feet away. She was asked: "Anything particular that you remember about his appearance." She mentioned his face, and described it, but did not mention his hands. The witness Brouch saw the robber pass a note to Flynn, and got close enough to read it. She was one to two feet from the robber and had a good view. She answered "his face," but did not mention his hands, when asked: "Is there anything particular that you remember about his appearance?" The argument that, if Bay were the robber, the witness would have noticed the tattoos, would again have been legitimate.

In its first petition for a rehearing, the government argued that there was no foundation for showing the tattoos. Because

the court ruled that the exhibition of the tattoos was testimonial, neither government counsel nor the judge raised lack of a foundation for the display of the tattoos as a basis for the court's ruling. No objection was made that there was no showing that the tattoos were on the defendant's hands at the time of the robberies. A foundation must be laid for the introduction of evidence, but if, when evidence is offered, there is no objection based on lack of a foundation, and the evidence is received, the point is not available on appeal. *United States v. Valdivia*, 9 Cir., 1973, 492 F.2d 199, 208. *See also* F.R.Evid. 103(a)(1); 1 Wigmore on Evidence, § 18 (Tiller's Revision, Vol. I), at 818.

The government urges us to affirm for lack of foundation for the offer of the tattoos, invoking the rule that we "must affirm if the result is correct, although the lower court relied upon a wrong ground or gave a wrong reason," *United States v. Best*, 9 Cir., 1978, 573 F.2d 1095, 1100–01. *See also United States v. Honigman*, 9 Cir., 1980, 633 F.2d 1336, 1338; *United States v. Bacall*, 9 Cir., 1971, 443 F.2d 1050, 1055–56. However, in none of these cases were we called upon to affirm the exclusion of evidence on grounds never raised by the appellee before the trial court or by the trial judge. To do so here would be quite unfair.

If in fact the tattoos were on Bay's hands at the time of the robberies, it should be easy for him to lay that foundation by the testimony of the members of his family or of acquaintances. This is not a case in which, as a matter of law, the excluded evidence should have been excluded on another ground, not raised at trial. In such a case, we should affirm on that ground, because there would be no way in which the party offering the evidence could get it admitted at a new trial. This is not such a case, and the defendant should have a chance, before the trial court, to meet the "no foundation" objection. *See People v. Shields*, 1981, 81 A.D.2d 870, 438 N.Y.S.2d 885, 886–87. *Brown v. United States*, 10 Cir., 1966, 356 F.2d 230, 233–34, involved an offer by the defendant to exhibit a scar on his body, which was denied. The court affirmed on the dual grounds that "Brown did not testify, and no proper foundation was laid." We cannot tell whether lack of foundation was raised at trial. If it was not, we would decline to follow the case.

There remains the question of whether we should reverse because the court refused to permit Bay to show the tattoos. We are now persuaded that the better procedure is to remand the case to the district court so that the court can hear testimony as to the foundation for display of the tattoos. If Bay can produce such testimony, the court should grant him a new trial on Counts I, II, and IV. If he cannot, the judgment may stand. See E.W. Cleary, McCormick on Evidence (3d Ed.1984), § 52, p. 131:

> If an untenable specific objection is sustained, there is authority that the appellate court will uphold the ruling if there is any other ground for doing so, even though not urged below.... However, some qualification must be made. If the correct objection, had it been made, could have been obviated, ... then a retrial seems appropriate.

## II. EVIDENCE OF PRIOR CONVICTION.

The trial court would not permit Bay to cross-examine Yvonne James, who testified that she drove Bay and two confederates back to Oakland from Orinda after the robbery on June 24, 1983, about her 1978 forgery conviction, ruling *sua sponte* that the conviction was "too far removed" in time. Evidence of a conviction of forgery, which is a crime involving dishonesty and false statement, is mandatorily admissible for impeachment purposes. *United States v. Field*, 9 Cir., 1980, 625 F.2d 862, 871; *see United States v. Glenn*, 9 Cir., 1982, 667 F.2d 1269, 1272–73; Fed.R.Evid. 609(a)(2). Evidence of a conviction more than ten years old is presumptively inadmissible as too remote. Fed.R.Evid. 609(b). James' seven year old conviction was ad-

missible, and the court acted outside the scope of its discretion in excluding it.

The government did not object to the admission of the evidence at trial, and concedes that the trial court erred, but argues that the error was harmless. If there is a new trial, the error should not be repeated. However, if no foundation for the exhibition of the tattoos is laid, we would not reverse for exclusion of evidence of James' forgery. We think that the error, in the circumstances, could be considered harmless.

### III. JURY INSTRUCTIONS.

 Bay argues that the trial court erred in rejecting requested jury instructions on informer, addict-informer, accomplice, and immunized witness testimony; eyewitness identifications; failure of a defendant to testify, number of witnesses presented by each side, and rejection of uncontradicted testimony. The formulation of jury instructions is in the trial court's discretion, so long as the issues presented are fairly and adequately covered. *United States v. Smith*, 9 Cir., 1984, 735 F.2d 1196, 1198. We must review jury instructions as a whole and in the context of the overall charge. *Branch v. Cupp*, 9 Cir., 1984, 736 F.2d 533, 537. In context, the rejection of the various proffered instructions, individually or cumulatively, did not deprive Bay of the opportunity to present his theory of the case. *See United States v. Marabelles*, 9 Cir., 1984, 724 F.2d 1374, 1383. The extensive cross-examinations of James and the eyewitnesses, Bay's arguments to the jury and the actual instructions provided a fair trial by a properly and adequately instructed jury.

The case is remanded to the trial court for proceedings consistent with this opinion.

SNEED, Circuit Judge, concurring in part and dissenting in part:

I adhere to my initial position. I would reverse the Count I conviction and affirm the Counts II and IV convictions. However, the limited remand directed by the majority is better than an outright reversal of the Counts II and IV convictions. For that I give two cheers.