**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Luther Erwin CLICK,
Defendant-Appellant.**

No. 86–5142.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 2, 1986.

Decided Jan. 8, 1987.

---

Bernard E. Revak, Asst. U.S. Atty., argued, Peter K. Nunez, U.S. Atty., Bruce R. Castetter, Asst. U.S. Atty., on the brief, San Diego, Cal., for plaintiff-appellee.

Kenneth D. Noel, Mogin & Noel, San Diego, Cal., for defendant-appellant.

Before WALLACE, SNEED, and SCHROEDER, Circuit Judges.

SNEED, Circuit Judge:

Luther Erwin Click appeals his conviction of bank robbery, 18 U.S.C. § 2113(a), following a trial by jury. He claims that the trial court erred in refusing to admit documentary evidence related to his physical and mental condition, and in refusing to question prospective jurors on bias against homosexuals during voir dire. We believe that the proposed evidence was irrelevant and that the district judge properly handled the voir dire. Therefore, we affirm.

## I.

## FACTS AND PROCEEDINGS BELOW

On October 16, 1985, Mary Rocha was working as a teller at Crocker National Bank, located at 190 Broadway in San Diego. At approximately 3:30 p.m. a male customer came to her teller window and handed her a note, written in pencil on a piece of pink paper. The note said: "This is a robbery. I have a gun. I am not alone." The note demanded $2000. The robber, speaking in a soft voice, told Rocha to gather the money and note and return both to him. She did as instructed, and the robber left the bank undetected. Rocha described the robber as caucasian, approximately five feet, five inches tall, and about 25 years old. She said his hair was tightly curled and was a light sandy color. She stated that the robber was shifting from side to side during the robbery.

On October 20, 1985, Alfredo Morales was working as a night duty clerk for the Federal Bureau of Investigation (FBI). At about 1:30 a.m., he received a telephone call from a man who identified himself as Luther Click. Click said he wanted to turn himself in for the robbery of the Crocker National Bank on Broadway. The caller stated that he was twenty-five, a male caucasian, and had brown hair. FBI agent Crawford responded to the telephone call and drove to the location given by the caller. He found Click waiting at that location. Click was taken into custody at about 2:00 a.m. and taken back to FBI headquarters, where he was advised of his constitutional rights. Click then told the FBI agents that he committed the October 16 robbery of Crocker National Bank at 3:30 p.m. He said that he gave the teller a note written on a piece of pink paper that stated: "This is a robbery. I have a gun. I want $2000. I am not alone." He said that he got away with $2000.

Click did not testify at his trial. He attempted to show that he did not match the description of the robber by establishing that he was five feet, ten inches tall, had a lisp, demonstrated effeminate mannerisms, and suffered from Huntington's

disease, which caused him to move jerkily. The teller had not mentioned these characteristics in her description of the robber. Click argued at trial that he falsely confessed in order to receive improved institutional care for his illness.

Without prior notice to the prosecution, Click attempted to introduce more than five hundred pages of documents related to his physical and mental condition and, purportedly, his state of mind. The documents consisted of statements he made to the staff of various psychiatric and medical facilities, as well as conclusions by the staff members. The trial judge ruled that this evidence related to a mental condition and excluded it as a penalty for not giving notice under Federal Rule of Criminal Procedure 12.2.[1] The judge also expressed doubts about the relevance of the evidence, and about whether the evidence was admissible under any exception to the hearsay rule. Click appeals the exclusion of this evidence.

Click, who is homosexual, also appeals the refusal of the trial judge to ask questions at voir dire concerning bias against homosexuals.

On March 17, 1986, Click was convicted of bank robbery.[2] On May 9, he was committed to the custody of the Attorney General for imprisonment for a period of ten years. The court also levied a fifty dollar assessment pursuant to 18 U.S.C. § 3013. Click filed a timely notice of appeal.

II.

DISCUSSION

A. *Exclusion of Documentary Evidence*

■ Click's theory of defense at trial was that he falsely confessed to the bank robbery in order to obtain treatment, by being put in jail, for Huntington's disease. He sought to present this defense by producing a stack of documents numbering over five hundred pages.[3] The documents, as already mentioned, consisted of various medical records from psychiatric and medical facilities where Click was treated for psychological, emotional, and physical problems related to Huntington's disease. According to Click, the records establish 1) that Click is unstable, depressed and generally unreliable; 2) that Click prefers and believes he needs institutional care; and 3) that Click was unhappy with his living arrangements. The defendant argues that these three propositions support the inference, argued in closing, that Click would rather go to jail than continue with the inadequate care he had received.

■ The district court excluded the records because the defendant failed to give the government timely notice, pursuant to Fed.R.Crim.P. 12.2(b), that he intended to present expert testimony relating to a mental condition bearing upon his guilt. Click argues that because his statements in the medical records are not expert testimo-

1. Federal Rule of Criminal Procedure 12.2 provides, in part:

(b) **Expert Testimony of Defendant's Mental Condition.** If a defendant intends to introduce expert testimony relating to a mental ... condition of the defendant bearing upon the issue of his guilt, he shall, within the time provided for the filing of pretrial motions ... notify the attorney for the government in writing of such intention and file a copy of such notice with the clerk....

...

(d) **Failure to Comply.** If there is a failure to give notice when required by subdivision (b) of this rule ..., the court may exclude the testimony of any expert witness offered by the defendant on the issue of his guilt.

2. The initial indictment charged the defendant with both bank robbery and armed bank rob-

bery. On March 17, 1986, the armed robbery charge was dismissed on the government's motion.

3. The government, relying on *United States v. Foster*, 711 F.2d 871, 880 (9th Cir.1983), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984), contends that Click's failure to mark the documents as an exhibit, or otherwise preserve them for review, should result in a denial of his appeal on the documentary evidence issue. However, this case differs from *Foster* in that Click preserved his issue for appeal by designating the portions of the record on which he relies as well as presenting to this court his written offer of proof made below. Therefore, we reject the government's argument.

ny, the district court improperly excluded the entire set of records on the basis of Rule 12.2.[4] Because we find that the proffered evidence is irrelevant, we need not reach the issue of the propriety of the exclusion of the evidence for failure to comply with Rule 12.2.[5]

■ Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Of course, only relevant evidence is admissible. Fed.R.Evid. 402. Although the definition of "relevant evidence" is broad, there are two distinct requirements that are implicit in that definition: "(1) The evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action." *United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. Unit A 1981).

The proposition sought to be proved by Click is that he confessed falsely in order to go to jail rather than continue with the care he was receiving. This proposition is certainly of consequence to the determination of Click's guilt, because the confession was a major part of the government's case against Click. However, we cannot discern how the proffered evidence is probative of a false confession. The statements by Click in the medical records show that he was depressed about his disease and perhaps that he felt he needed hospital care, but the statements simply do not allow the inference that Click confessed in order to go to jail. We fail to see how, by going to jail, Click would receive improved health care. As the district court noted: "You could hardly call a jail ... a mental health facility." Excerpt of Record at 83. Click's statements contained in the medical records would not have materially assisted the jury in any way. The statements are irrelevant and thus the trial court's exclusion of this evidence was proper.

**B.** *Voir Dire*

■ Click contends that the district court erred in conducting voir dire by not asking a proposed question of the jury that was designed to explore the jurors' attitudes toward homosexuals. In conducting voir dire, the trial court has wide latitude, and failure to ask specific questions will be reversed only if there is an abuse of discretion. *United States v. Jones*, 722 F.2d 528, 529 (9th Cir.1983) (per curiam). While it is abuse of discretion to fail to ask questions reasonably sufficient to test jurors for bias, the court may refuse questions that are "tied to prejudice only speculatively." *Id.*

■ Although a question concerning effeminate mannerisms could have been asked, we have no difficulty in finding that the judge's failure to ask Click's question did not amount to an abuse of discretion. The trial court found that the question would be improper because it would unnecessarily call attention to Click's effeminate mannerisms. In any event, the effect of asking such a question is sufficiently problematic to justify its avoidance by the trial court. The court conscientiously questioned the panel and determined that each member could serve as a fair and impartial juror in the case. Considering the voir dire as a whole, refusal of Click's question was not an abuse of discretion.

The judgment is affirmed.

---

**4.** The district court found after reading through the medical reports that it would not be clear to the jurors what parts of the report were conclusions of the person completing the report and what parts were actually verbatim statements of Click.

**5.** It is proper for an appellate court to affirm a correct decision of a lower court even when that decision is based on an inappropriate ground. *See United States v. Best*, 573 F.2d 1095, 1100–01 (9th Cir.1978); *cf. United States v. Bay*, 762 F.2d 1314, 1317 (9th Cir.1984) (refusing to affirm the exclusion of evidence on grounds never raised by the appellee before the trial court or by the trial judge, where the proper ground for exclusion (lack of foundation) could have been obviated had the correct objection been made). In this case, unlike *Bay, id.*, there is no way in which Click could have succeeded in getting the records admitted into evidence.