35 F.3d 572
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Byron JAMERSON, Defendant-Appellant.
 No. 90-50689.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 4, 1994.
Decided Aug. 31, 1994.
 
 Before: HUG, WIGGINS, and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Byron Jamerson ("Appellant") appeals his conviction for possession of controlled substances with intent to distribute, distribution of controlled substances, and conspiracy. Appellant alleges several different species of trial error. We find at least one reversible error, vacate Appellant's conviction, and remand for new trial.
 
 I. Pre-Trial Identification
 
 3
 Appellant argues that the pre-trial identification was so suggestive as to taint the in-court identification. We take this argument to include the argument that testimony regarding the out-of-court identification also should have been excluded. Appellant objected to the in-court identification on appeal only. The government responds that the pretrial identification was reliable and therefore admissible, and also that the in-court identification was reliable and admissible even if the pretrial identification was not admissible.
 
 
 4
 To determine whether an out-of-court identification is so impermissibly suggestive as to taint subsequent identification testimony in violation of a defendant's due process rights, this court examines the totality of the surrounding circumstances. United States v. Nash, 946 F.2d 679, 681 (9th Cir.1991). The standard of review is probably de novo. See id. (noting conflict in circuit and suggesting that review is de novo); see also United States v. Dring, 930 F.2d 687, 692 (9th Cir.1991) (noting conflict but not resolving it), cert. denied, 113 S.Ct. 110 (1992). We need not resolve the standard of review because we conclude that the district court's decision survives even the most thorough, de novo review. With respect to the in-court identification, this court reviews for plain error a district court's decision to admit testimony where there was no contemporaneous objection. United States v. Gomez-Osorio, 957 F.2d 636, 642 (9th Cir.1992); Fed.R.Evid. 103(d); Fed.R.Crim.P. 52(b).
 
 
 5
 A defendant may be denied due process by admission of a pretrial photographic identification that is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." United States v. Hanigan, 681 F.2d 1127, 1133 (9th Cir.1982) (quoting Simmons v. United States, 390 U.S. 377, 384 (1968)), cert. denied, 459 U.S. 1203 (1983). "Identification procedures that emphasize a single individual's photograph may be unduly suggestive." Id. (citing Simmons, 390 U.S. at 383).
 
 
 6
 Single-photo, pre-trial identifications where the witness knows that the subject of the photo is a suspect are usually considered suggestive unless justified by some exigency.[1] The Supreme Court, however, has instructed that testimony regarding a suggestive identification need not be automatically excluded. Instead, each case is to be considered on its own facts, with reliability of identification as the ultimate concern. Simmons, 390 U.S. at 384. Under facts similar to those at issue here, see n. 1, supra, the Supreme Court has held that a suggestive, single-photograph, pre-trial identification was admissible because factors indicating reliability outweigh the "corrupting effect of the suggestive identification itself." Manson v. Brathwaite, 432 U.S. 98, 114 (1977). Those factors include (1) the opportunity to view the criminal at the time of the crime, (2) the witness's degree of attention (specifically, police training), (3) the accuracy of the prior description, (4) the witness's level of certainty at the confrontation, and (5) the length of time between the crime and the identification. Id. at 114-16; Neil v. Biggers, 409 U.S. 188, 200-01 (1972); Dring, 930 F.2d at 692-93.
 
 
 7
 The facts of this case indicate that the testimony may be considered reliable despite the suggestiveness of the pre-trial identification. Jefferson was within an arm's-length of Jamerson. Jefferson was a law enforcement officer trained to identify suspects. His observations were fairly accurate. His probable mistaking of the gold inlay for a gap is not enough to establish that the identification was unreliable. See Dring, 930 F.2d at 693 (finding identifications reliable even though none of the witnesses had mentioned that the suspect wore a beard). Jefferson was certain of the identification at trial. Finally, the time between the encounter and the photographic identification was reasonably short (ten days, as compared to two weeks in Dring or three days in Brathwaite ).
 
 
 8
 The factors discussed above indicate that testimony of the pretrial identification was probably sufficiently reliable to support its admission despite the suggestiveness of the procedure. This conclusion is strengthened by the strong similarities between the facts in this case and those in Brathwaite. We conclude that the testimony about the out-of-court identification was admissible.
 
 
 9
 If the out-of-court identification is admissible, the in-court identification is likewise admissible. Brathwaite, 432 U.S. at 110 n. 10 ("[I]f the challenged identification is reliable, then testimony as to it and any identification in its wake is admissible."). We find no reversible error in the admission of the in-court and out-of-court identifications.
 
 II. Hearsay
 
 10
 In the course of testimony about the out-of-court identification, the government elicited testimony from the undercover agent present at the deal that a confidential informant said that another participant in the deal (Cuba) had said that Appellant was the one the agent had seen in the car. Appellant argues that the testimony was inadmissible hearsay not within any exception. The government argues that the testimony was not hearsay because it was not offered for the truth of the matter asserted. In the alternative, the government argues that any error was harmless.
 
 
 11
 Whether the district court correctly construed the hearsay rule is a question of law reviewable de novo. United States v. Layton, 855 F.2d 1388, 1398 (9th Cir.1988), cert. denied, 489 U.S. 1046 (1989). "We review a district court's decisions to admit evidence under exceptions to the hearsay rule for an abuse of discretion." United States v. Bland, 961 F.2d 123, 126 (9th Cir.), cert. denied, 113 S.Ct. 170 (1992).
 
 
 12
 The district judge overruled the objection on the grounds that the testimony went to "identity." He probably was thinking of the principle that testimony by a witness to his own prior identification is not hearsay. See Gilbert v. California, 388 U.S. 263, 272 n. 3 (1967) (discussing admissibility of extra-judicial identifications by witness as an exception to hearsay). That principle does not apply to the out-of-court statements by non-witnesses involved here. If the testimony was offered for purposes of identifying the man in the brown Chevrolet as Jamerson, it was classic hearsay (actually double hearsay).
 
 
 13
 The government now argues that the testimony was offered for purposes of explaining how Jefferson identified Jamerson out of court. The question then becomes whether such testimony was relevant. "For evidence to be relevant, it must be probative of the propositions it is offered to prove, and ... the proposition to be proved must be one that is of consequence to the determination of the action." United States v. Dean, 980 F.2d 1286, 1288 (9th Cir.1992) (internal quotations and citations omitted). The government argues that the testimony was probative of Jefferson's state of mind at the time he made the initial identification and is therefore relevant to show the reliability of Jefferson's in-court identification of defendant.
 
 
 14
 We are not persuaded by that characterization of the testimony. The facts that the confidential informant had already identified the perpetrator to Jefferson and that the "identification" was made against a single photograph known to be the person so identified actually tend to show that the pre-trial identification was impermissibly suggestive and un reliable. The putative hearsay only supports the reliability of the identification to the extent that it is accepted as proof of the matter asserted--that Jamerson was the one in the car. We do not doubt that the government intended that the testimony about Jamerson's identification by Cuba and the confidential informant be accepted by the jury for the truth of the assertion that Jamerson was the one in the car that night. The testimony was therefore hearsay, and, moreover, hearsay that does not fall within any exception. There are no particular guarantees of trustworthiness as to either level of hearsay.
 
 
 15
 Moreover, we cannot conclude that the admission of such hearsay was harmless error. It bears directly on identification, a crucially important issue in this trial. Absent the testimony that Cuba had fingered Appellant, the jury might well have concluded that there was a reasonable doubt about whether or not Appellant actually was the one in the car that night. We therefore conclude that the district court committed reversible error by admitting the double hearsay that Appellant was the one seen by Jefferson at the drug deal.
 
 III. Credibility Instruction
 
 16
 Appellant contends that the members of the jury were not instructed on their duty to evaluate the credibility of the witnesses. He argues that the lack of instructions in such a basic area constitutes plain error. The government responds that the district judge gave lengthy and appropriate pre-trial instructions on the subject and did not err by simply alluding to those pre-instructions in charging the jury after the brief, two-day trial: "you are to judge [defendant's] testimony as you would judge the testimony of any other witnesses as you have been previously instructed." The government also alluded to the pre-instructions, saying "[r]emember the instructions that Judge Real gave you at the beginning of the case. In weighing the credibility of a witness consider the motives he may have when he is testifying. Consider what he may have to lose or gain by a result in this case."
 
 
 17
 Ordinarily, a district court's formulation of jury instructions is reviewed for an abuse of discretion. United States v. Johnson, 956 F.2d 197, 199 (9th Cir.1992). "Our inquiry is whether the jury instructions as a whole are misleading or inadequate to guide the jury's deliberation." United States v. Joetzki, 952 F.2d 1090, 1095 (9th Cir.1991). Where there is no objection to the jury instructions at the time of trial, as here, this court will review only for plain error. United States v. Fagan, 996 F.2d 1009, 1016 (9th Cir.1993); United States v. Boone, 951 F.2d 1526, 1541 (9th Cir.1991).
 
 
 18
 In United States v. Payne, 944 F.2d 1458, 1462-68 (9th Cir.1991), cert. denied, 112 S.Ct. 1598 (1992), we held that the failure to give instructions to the sworn jury on the presumption of innocence was not reversible (plain) error because the judge repeatedly referred to the presumption of innocence to the venire during voir dire and because defense counsel reminded jurors of the presumption. If failure to instruct on the presumption of innocence is rendered not reversible by virtue of relatively informal previous statements, failure to repeat instructions on credibility cannot be considered plain error. See also United States v. Ruppel, 666 F.2d 261, 274 (5th Cir.) (holding that failure to instruct on the presumption of innocence after the close of evidence, though error, was not reversible because the district judge charged the jury on that point at the beginning of the trial and referred to the presumption in his final charge, and because defense counsel referred to the presumption of innocence in his closing argument), cert denied, 458 U.S. 1107 (1982). We conclude that any error is not reversible.
 
 IV. Identification Instruction
 
 19
 Appellant argues that the district court erred by refusing to give appellant's requested instruction regarding identification testimony. He claims that the jury was left without guidelines for evaluating testimony for eyewitness identification accuracy or general credibility, and argues that such an instruction was critical because identification was the dominant issue in the case.
 
 
 20
 Appellant's argument is without merit. The jury was thoroughly pre-instructed on assessing credibility. Moreover, specific identification instructions are disfavored. 9th Cir.Crim.Jury Instr. 4.13 comment (1992) (recommending that specific eyewitness identification instruction not be given). "Even where the only evidence is identification evidence, general instructions on the jury's duty to determine the credibility of witnesses and the burden of proof are fully adequate." United States v. Miranda, 986 F.2d 1283, 1285-86 (9th Cir.) (affirming refusal to issue identification instruction), cert. denied, 113 S.Ct. 2393 (1993). The district court did not err by refusing to give Appellant's proposed instruction.
 
 V. Display of Physical Characteristic
 
 21
 Finally, Appellant argues that he should have been allowed to show his teeth to the jury, close-up, because the appearance of his teeth was relevant to the identification and because the jury was unable to see them well during Appellant's testimony because of courtroom geography.[2] The district court denied appellant's request because testimony by appellant's brother had already been admitted on the condition of appellant's teeth in early 1987 and because the condition of his teeth at trial was not necessarily representative of that in 1987.
 
 
 22
 Under Fed.R.Evid. 403, the district court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice ... or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." There is no denying that actually seeing Appellant's teeth would have been probative of how easily the dental work might have been mistaken for a gap. Prejudice to the prosecution from the display was unlikely, unless there was some reason to believe that Appellant's teeth had changed between the time of the offense and trial. And the viewing of Appellant's teeth, while cumulative of the testimony about their appearance, is probably not needlessly so, because the display would literally give the jurors a different perspective on the fact at issue. Given the district court's justification for its ruling at the first trial, we must conclude that the refusal to allow the display of Appellant's physical characteristics was error.
 
 VI. Conclusion
 
 23
 Due to the error of admitting double hearsay about Cuba's out-of-court statements that Appellant was present at the drug deal in question, we VACATE the judgment of conviction entered against Appellant and REMAND for new trial consistent with our decision.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In Brathwaite v. Manson, 527 F.2d 363 (2d Cir.1975), rev'd, 432 U.S. 98 (1977), the Second Circuit considered a similar factual situation. There, an undercover narcotics agent (Glover) had observed a suspect for two or three minutes in the course of a transaction. Another officer (D'Onofrio), claiming to recognize the description of the suspect, produced a photograph of a suspect, which was identified by agent Glover. The court observed that
 [n]ot only was [the identification] impermissibly suggestive, but ... it was unnecessarily so. There was no emergency that prevented D'Onofrio from assembling a suitable array of photographs from the many fitting Glover's description that must have been available in the files of the Hartford Police Department. In fact there was so little urgency that two days passed before Glover identified Brathwaite's photo and D'Onofrio waited for three months before making Brathwaite's arrest.
 527 F.2d at 367 (emphasis omitted). The Second Circuit also found that the suggestiveness was enhanced by D'Onofrio's statement that he knew who the suspect was. Id. at n. 5. The Second Circuit's per se exclusion of unnecessarily suggestive identifications, however, was disapproved by the Supreme Court. 432 U.S. at 112-13.
 
 
 [2]
 Appellant relies on cases holding that a defendant need not waive his fifth amendment right against self-incrimination in order to be allowed to display physical characteristics. E.g., United States v. Bay, 762 F.2d 1314, 1315-17 (9th Cir.1985). Such cases are inapplicable because Appellant was not forced to choose between taking the stand and foregoing the introduction of favorable, non-testimonial evidence. The issue here is purely an evidentiary one