937 P.2d 701

**STATE of Arizona, Appellee,**

v.

**Anthony GAINES, Appellant.**

**No. 1 CA–CR 96–0380.**

Court of Appeals of Arizona,
Division 1, Department B.

March 13, 1997.

Review Denied June 5, 1997.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section and Diane M. Ramsey, Assistant Attorney General, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Paul J. Prato, Deputy Public Defender, Phoenix, for Appellant.

## OPINION

GERBER, Judge.

Appellant Anthony Gaines (Gaines) appeals from his conviction and sentence for second degree burglary. We hold that the trial court erred in permitting the state to cross-examine Gaines regarding his physical characteristics. Because we find that this ruling constituted prejudicial error, we reverse the conviction and remand for re-trial.

### FACTS AND PROCEDURAL HISTORY

Mark O'Leary (O'Leary) saw two men enter a neighbor's garage. O'Leary told his step-father, Dennis Plummer (Plummer), what he had seen. Plummer and O'Leary saw the men exit the garage with the neighbor's children's bikes. Plummer, O'Leary and a relative staying at the neighbor's house got into a truck and followed the thieves, who had ridden away on the bikes. They caught up to the men on the bikes near a cotton field where the thieves dropped the bikes and ran. O'Leary, Plummer and the relative then retrieved the bikes and drove them back to the neighbor's house.

Plummer and O'Leary picked up a hand gun and returned to the cotton field to again look for the thieves. Plummer fired a shot into the air and two men came out from the field. Plummer briefly conversed with the two men, who then walked away. Police soon arrived and eventually found Gaines and a companion in the field. When an officer drove Plummer and O'Leary to the area where Gaines and the other suspect were detained, they identified Gaines and the other man as the thieves. However, neither Plummer nor O'Leary could identify Gaines' photograph in a photographic lineup three months after the incident.

The trial defense was misidentification. Gaines' counsel argued that Gaines and his brother had been jogging by the cotton field, that they had been accosted by Plummer at gunpoint, and that they were not the men who had stolen the bikes. Both Plummer and O'Leary identified Gaines at trial as one of the two men they had seen steal the bikes.

Plummer testified that Gaines had distinctive eyebrows that helped Plummer identify Gaines at the show-up as the man he had confronted in the cotton field.

Gaines did not offer any witnesses. However, at the close of the state's case, Gaines' counsel asked the court if Gaines could closely approach the jury box so that the jurors could observe his face and eyebrows. Gaines apparently wanted to show the jury that his eyebrows were not unusual and thereby cast doubt on Plummer's identification of him. The state argued that, if Gaines made such a display to the jury, the state should be entitled to cross-examine him. Defense counsel replied that cross-examination of physical characteristics was inappropriate and that, instead, the jury could simply compare Gaines' trial appearance with his photograph from the lineup.

The trial court ruled that Gaines could approach the jury but that the state would be allowed to cross-examine him regarding his physical characteristics. Gaines then stood in front of the jury box. Thereafter he was sworn and the state questioned him regarding his physical appearance. Defense counsel asked no questions.

The jury found Gaines guilty of second degree burglary. The trial court imposed a presumptive prison term of six and one-half years.[1] Over Gaines' objection, the court ordered that he pay restitution in the amount of $477.72 for lost wages for the victim's time spent in court waiting to testify. Gaines timely filed this appeal.

### ISSUES

Gaines raises the following issues on appeal:

1. Whether the trial court improperly permitted the state to cross-examine Gaines on a limited basis after Gaines stood before the jury;

2. Whether the trial court properly ordered Gaines to pay the victim restitution for lost wages incurred while attending the trial.

---

1. Gaines admitted a prior felony conviction for attempted possession of a narcotic drug and that

he was on parole for this crime at the time of his arrest for the theft of the bikes.

Because we reverse Gaines' conviction on the first issue, we need not reach the issue regarding restitution.

## DISCUSSION

Gaines argues that the trial court's requirement that he submit to limited cross-examination by the state as a condition to displaying his physical appearance to the jury violated his privilege against self-incrimination.

The Fifth Amendment's privilege against self-incrimination prevents a defendant from being compelled to testify against himself. U.S. Const. amend. V. This privilege applies to the states by its incorporation into the due process clause of the Fourteenth Amendment. *Malloy v. Hogan,* 378 U.S. 1, 8, 84 S.Ct. 1489, 1493–94, 12 L.Ed.2d 653 (1964).[2]

Of course the privilege against self-incrimination may be waived. For instance a defendant who voluntarily takes the stand waives his Fifth Amendment privilege and may be cross-examined. *State v. Woody,* 108 Ariz. 284, 287, 496 P.2d 584, 587 (1972). Therefore, the trial court's ruling that Gaines could be cross-examined was proper if the display of his physical appearance before the jury constituted a waiver of the privilege against self-incrimination. The answer to this question depends on whether his demonstration constituted testimony under the Fifth Amendment.

If a defendant's exhibition of a physical characteristic were testimonial, the state would be prohibited by the Fifth Amendment from compelling such a display. In addition, any such voluntary demonstration by the defendant would waive his privilege against self-incrimination and properly expose him to cross-examination. However, if such a physical display were not "testimony" but merely demonstrative evidence, Fifth Amendment considerations would not arise. In that event, the state would be permitted to compel a defendant to make such a display without violating the defendant's privilege against self-incrimination, and, for his part, the de-

fendant could voluntarily offer such a display without submitting to cross-examination. *See State v. Martin,* 519 So.2d 87, 90 (La. 1988).

The United States Supreme Court has reached the latter conclusion. It has found no Fifth Amendment violation when the state compels the defendant merely to display physical characteristics. *See Schmerber v. California,* 384 U.S. 757, 764, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908 (1966) (distinguishing between an accused's communications, which are protected by the privilege against self-incrimination, and the accused's physical characteristics, which are not protected); *see also State v. Lee,* 184 Ariz. 230, 233, 908 P.2d 44, 47 (App.1995) (Fifth Amendment does not protect an accused from being compelled to produce "real or physical evidence" as opposed to testimonial or communicative evidence). Federal and state courts alike have held that the self-incrimination clause of the Fifth Amendment "offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture." *Schmerber,* 384 U.S. at 764, 86 S.Ct. at 1832.

In light of this jurisprudence, the state had the right, if it so chose, to compel Gaines to display his physical characteristics to the jury. Such a demonstration would not have been testimony nor would it have violated Gaines' Fifth Amendment rights. Should a defendant's display of the same physical characteristics be treated differently when the defendant rather than the state desires the physical demonstration?

Most of the cases that have considered this narrow issue conclude that a physical display offered by the defendant should be treated exactly like such a display offered by the state. *See* John B. Spitzer, Annotation, *Display of Physical Appearance of Defendant for Purpose of Challenging Prosecution Evidence as "Testimony" Resulting in Waiver*

2. The Arizona Constitution provides that "[n]o person shall be compelled in any criminal case to give evidence against himself...." Ariz. Const. art. II, § 10. The federal and Arizona privileges against self-incrimination are substantively identical. *State v. Adams,* 181 Ariz. 383, 385, 891 P.2d 251, 253 (App.1995).

*of Defendant's Privilege Against Self-Incrimination,* 81 A.L.R. Fed. 892 (1987).

Only one recent federal case is closely on point. In *United States v. Bay,* 762 F.2d 1314 (9th Cir.1984), defense counsel asked to have the defendant show the jury tattoos on the backs of his hands. Counsel wished to argue that the failure of eyewitnesses to mention the tattoos in their testimony raised a doubt about their identifications of the defendant. As happened here, the trial court in *Bay* ruled that such an exhibition would require the defendant to submit to cross-examination. Bay then did not take the stand or exhibit the tattoos. The Ninth Circuit Court of Appeals held that the trial court's ruling was error because a mere display of physical evidence such as hands is non-testimonial. The court noted that the government could have compelled the defendant to show his hands to the jury. *Id.* at 1315. Physical characteristics relevant to eyewitness identifications could be displayed to the jury and mentioned in argument without a defendant having to take the stand for cross-examination or impeachment. *Id.* at 1315–16.

The state relies on *United States v. Esdaille,* 769 F.2d 104 (2d Cir.), *cert. denied,* 474 U.S. 923, 106 S.Ct. 258, 88 L.Ed.2d 264 (1985), and argues that, because a person's eyebrows can be easily altered, there was no abuse of discretion in the trial court's ruling permitting limited cross-examination on Gaines' appearance. In *Esdaille,* the defendant desired to refute a police identification by demonstrating to the jury, without submitting to cross-examination, that he had a heavy Caribbean accent. The Second Circuit Court of Appeals held that the trial court did not abuse its discretion in refusing to allow the voice exemplar. The refusal was not error because the exemplar had limited probative value given the ease with which an accent can be feigned. 769 F.2d at 107. In distinguishing *Bay,* the appellate court noted that the issue in *Esdaille* was not whether an act was testimonial such that Fifth Amendment rights would be waived but whether the voice exemplar was reliable evidence. . *Id.* Unlike in *Esdaille,* the state here never argued before the trial court that Gaines' display of his physical appearance was unreliable.

■ We agree with the Ninth Circuit Court of Appeals in *Bay.* Gaines' display of his physical characteristics before the jury was non-testimonial. The display was simply a closer showing of the same physical characteristics already plainly apparent as Gaines sat in the courtroom next to his attorney. The trial court therefore erred in requiring him to submit to cross-examination.

In explaining his ruling, the trial judge acknowledged that Gaines did not wish to take the stand and that, by presenting himself to the jury, he was not testifying within the normal meaning of that word. The trial court denied the state's request to fully cross-examine Gaines if he made the display. However, the judge stated that, because identification was an important issue, an appropriate compromise would be to allow Gaines to be cross-examined about his physical characteristics only.

This compromise was error. Because Gaines' display was not testimonial, he did not waive his privilege against self-incrimination. Without a voluntary waiver,[3] he should not have been subjected to any cross-examination by the state, limited or otherwise. *See State v. Martin,* 519 So.2d 87, 92 (La. 1988) (where defendant desired to display his tattoos to the jury, trial judge's proposal to allow cross-examination limited to questions involving the tattoos was error).

■ Gaines argues that the trial court's error in requiring him to submit to cross-examination after his display constitutes structural error requiring reversal. Structural errors "affec[t] the framework within which the trial proceeds" and cannot be reviewed to determine if they are harmless. *State v. Fullem,* 185 Ariz. 134, 138, 912 P.2d 1363, 1367 (App.1995). Absent such structural defects, this court will not reverse a

---

**3.** Much of the discussion between counsel and the trial judge regarding Gaines' desire to present himself to the jury without taking the stand and the state's desire to cross-examine took place off the record. However, it is apparent from the record that Gaines desired to make his display without testifying and that his counsel did object to the cross-examination.

criminal conviction based on an erroneous ruling by the trial court, constitutional or otherwise, if we can say, beyond a reasonable doubt, that the error did not affect the verdict. *State v. Bible*, 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993), *cert. denied*, 511 U.S. 1046, 114 S.Ct. 1578, 128 L.Ed.2d 221 (1994).

■ The United States Supreme Court has noted that structural defects include such matters as total deprivation of counsel, a judge lacking impartiality, unlawful exclusion of jurors of the defendant's race, denial of the right to self-representation and denial of the right to a public trial. *Arizona v. Fulminante*, 499 U.S. 279, 309–10, 111 S.Ct. 1246, 1264–65, 113 L.Ed.2d 302 (1991). Other courts have held that an error by the trial court in requiring cross-examination as a condition to a defendant's display of a physical characteristic may be harmless. *See Bay*, 762 F.2d at 1316; *Martin*, 519 So.2d at 93. We consider it appropriate to apply harmless error analysis to determine if the trial court's error requires reversal.

The state argues on appeal that any error by the trial court in permitting limited cross-examination of Gaines was harmless because Gaines failed to offer any foundation for a close-up view of his physical characteristics. The state argues that such limited cross-examination was merely an attempt to remedy the lack of foundation. However, although the state asked Gaines during cross-examination whether he had changed since the day of the incident, the state never seriously contended during the cross-examination or closing argument that Gaines had altered his eyebrows prior to trial.

In addition the state failed to object at trial to Gaines' request on this now-asserted lack of foundation. The state merely argued that the display constituted testimony and asked that it be permitted to cross-examine Gaines. The state may not raise the objection of lack of foundation for the first time on appeal. In any event, when Gaines asked to make the display, the state's witness Plummer had already testified both that Gaines' distinctive eyebrows had helped him identify Gaines and that Gaines looked the same at trial as he did when Plummer saw him on the

day the bikes were stolen. This testimony established the relevancy of Gaines' display.

Our research reveals only one other case like the present one in which (1) a defendant wished to display a physical characteristic, (2) the trial court ruled that such a display would require the defendant to take the stand, and (3) the defendant elected to make the display. *See People v. Shields*, 81 A.D.2d 870, 438 N.Y.S.2d 885 (1981). In *Shields*, a defendant on trial for rape desired to display an abdominal scar. The victim had testified that she did not notice any scars on the rapist. The trial court stated that it would grant the defendant's request if the defendant took the stand to indicate whether the scar existed on the night of the rape. The trial court also ruled that the prosecutor could question the defendant about prior convictions. The defendant then offered to present testimony from his sister and hospital records to prove that the scar pre-existed the rape. The court adhered to its prior ruling. Thereafter, the defendant took the stand, exhibited his scar and testified that he had the scar prior to the crime. The defendant was then impeached with his prior convictions. *Id.*, 438 N.Y.S.2d at 886.

The appellate court in *Shields* held that the trial court erred in refusing to allow the defendant to offer foundation other than by taking the stand. The court also ruled that the defendant was prejudiced by the impeachment and, given that proof of the defendant's guilt was not overwhelming, the trial court's error was reversible. *Id.* at 887.

■ Although Gaines' cross-examination was limited to questions regarding his physical appearance and did not involve impeachment by prior convictions, we nonetheless hold that, as in *Shields*, the trial court's ruling that Gaines could be cross-examined, even on a limited basis, constitutes reversible error. The limited cross-examination forced Gaines to expose his responsiveness, mannerisms, personality and credibility to the jury. In addition, the court's ruling highlighted for the jury the fact that he was not testifying about other aspects of the case, thereby raising unavoidable incriminating implications about his selective silence. The trial court's instruction that the jury must not find guilt

based on the defendant's refusal to testify did not cure these implications where the jury was aware that Gaines *did* testify about some limited matters.

In presenting its case against Gaines, the state did not offer any physical evidence such as fingerprints. Rather, its entire case against Gaines rested on the eyewitness identifications which Gaines attempted to partially discredit by the display of his eyebrows. Given the lack of overwhelming proof of guilt, we cannot say beyond a reasonable doubt that the trial court's error in allowing the state to cross-examine Gaines was harmless.

## CONCLUSION

The trial court committed reversible error when it required Gaines to submit to cross-examination after he displayed his physical characteristics to the jury. We therefore reverse the conviction and sentence and remand the case for a new trial.

NOYES, P.J., and EHRLICH, J., concur.