THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ORLANDO BURTON *et al.*, Defendants-Appellants.

First District (1st Division)    Nos. 77-393, 77-394 cons.

Opinion filed August 21, 1978.

916

James J. Doherty, Public Defender, of Chicago (Paul Goodman and John Kalnins, Assistant Public Defenders, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, James S. Veldman, and Joseph P. Quirk, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Orlando Burton and Willie Proctor were both arrested after an incident at 12103 South Lowe Avenue in Chicago, Illinois. By complaint, Burton was charged with battery and unlawful use of weapons and Proctor with obstructing a police officer. On July 28, 1976, the defendants were tried together before a jury. At the close of the State's case in the July 28 trial and pursuant to defendant Burton's motion, the trial court entered a finding of not guilty on the charge of unlawful use of weapons. After the defendant Burton and an occurrence witness testified for the defense, the cause went to the jury, which, after extended deliberations, declared itself hopelessly deadlocked. A mistrial was ordered and on October 6, 1976, defendants were again tried together before a jury which found Burton guilty of battery and Proctor guilty of obstructing a police officer. The trial court entered judgments on these verdicts and sentenced Burton to 90 days and Proctor to 30 days in the House of Correction.

Defendants now appeal and contend as follows: (1) that they were denied their right to a fair trial due to the assistant State's Attorney's repeated reference to the fact that the defendants failed to testify and further reference to evidence not produced at trial; and (2) that the trial court committed reversible error in refusing to instruct the jury on self-defense.

We reverse and remand.

At the second trial, the State called only two witnesses, police officers Curd and Dougherty who testified that at approximately 2:20 a.m. on January 31, 1976, they received a call over their police radio and proceeded to 12103 South Lowe in Chicago. Upon arriving at the scene, the officers observed that the street was crowded with people and that

other police officers were arresting some of these people. After receiving instructions to remain on the scene, Officers Curd and Dougherty entered the house at 12103 South Lowe, noticed a shattered window, and recovered a piece of lead from a bullet which had apparently shattered the window.

The officers exited the building and for the first time noticed the defendant Burton. Burton was wearing a multicolored jacket and was screaming and kicking a squad car. As Burton walked into the house at 12103 South Lowe, the officers received a radio call and began searching for a man with a multicolored jacket carrying a gun in his waistband. At this point, Burton exited the house carrying a child. The officers apprehended Burton and Officer Dougherty asked him if he had a gun. When he replied no, Officer Dougherty reached into defendant's waistband, pulled out a revolver, and informed Burton that he was under arrest. Burton replied that he was not going to jail. At this point, Willie Proctor, who was standing nearby, talked Burton into cooperating. Officers Curd and Dougherty permitted Burton to take the baby back into the house. When Burton and the officers reached the living room, Burton put the baby down and again stated that he was not going to jail. Ignoring further requests by Proctor to go peacefully, Burton kicked off his shoes and assumed a karate stance. Officer Curd then approached Burton, grabbed Burton's right arm and pulled him toward the door. Officer Dougherty grabbed Burton by the left arm.

According to Officer Curd's testimony, Burton then broke free, started to swing wildly, and hit Officer Curd in the mouth. The force of the blow cut Officer Curd's lip and knocked out a tooth. Officer Curd retaliated by striking Burton twice in the face with a flashlight, causing Burton to fall to the ground. Although Officer Curd observed no blows thrown by anyone else, he observed Proctor falling to the ground at this time. The officers then carried both defendants from the house and took them to the police station.

According to Officer Dougherty's testimony, Proctor jumped him as he attempted to drag defendant Burton to the police car. Dougherty testified that he and Proctor struggled, that he hit Proctor once with his flashlight, and that Proctor fell to the floor. He also testified that he did not see either defendant Burton or Officer Curd strike any blows.

During cross-examination, Officer Curd admitted that at the first trial his testimony made no mention of the fact that he first saw Burton yelling and kicking a squad car at the scene. Officer Curd testified at the first trial that he first saw Burton exiting the house with the child. Officer Curd further admitted that a police report concerning the incident reflects that Burton "ran" into the house with the child and that the altercation was between two police officers and 10 other people. During cross-

examination, Officer Dougherty admitted that the police report indicates that Proctor grabbed Burton. This is in conflict with Officer Dougherty's testimony that Proctor grabbed Officer Dougherty when the altercation began.

The only witness to testify for the defense at the second trial was Robert Madoch, the official court reporter during defendants' first trial. Mr. Madoch testified that during jury deliberations in the first trial, he had a conversation with the assistant State's Attorney and Officer Dougherty in a bar across the street from the courtroom. Madoch testified that during that conversation, Officer Dougherty told him that he was trying to provoke defendant Burton into fighting.

Defendants' first contention is that they were denied a fair trial due to the State's repeated reference to the fact that the defendants failed to testify. Defendants cite three separate instances during trial. The first instance occurred during the prosecution's opening statement wherein the assistant State's Attorney, after urging the jury to listen closely to the defense evidence and indicating what the State believed the defense would try to tell the jury, stated to the jury that "somebody is going to be lying," and that it is either the State "or the defense that is putting on the truth." The trial court sustained a defense objection to the above comment. The second instance occurred during the cross-examination of the only defense witness, Robert Madoch. During that cross-examination, and by means of a series of leading questions, the assistant State's Attorney elicited testimony that defendant Burton had previously testified at a trial concerning the same incident. The final instance occurred during the prosecution's closing statement and consisted of the following statement by the assistant State's Attorney: "* * * [The State's case] has been uncontradicted *even though defendant never gets on the stand,* the defense is stuck with what we put on, and that is uncontradicted." (Emphasis added.) Defense counsel objected to this comment and the trial court sustained the objections.

The Code of Criminal Procedure of 1963 provides in relevant part that "* * * [a defendant's] *neglect to testify shall not create any presumption against* [the defendant], nor shall the court permit any reference or comment to be made to or upon such neglect." (Ill. Rev. Stat. 1975, ch. 38, par. 155—1.) Any comment on the accused's failure to testify is error. *People v. Wollenberg* (1967), 37 Ill. 2d 480, 229 N.E.2d 490; *People v. Garnes* (1973), 12 Ill. App. 3d 210, 298 N.E.2d 399.

■■ The State, however, argues that the above comments did not refer to the defendants' failure to testify, but were merely permissible comments that the evidence was uncontradicted. Although it is true that the State may comment that its case is uncontradicted (*People v. Norman* (1963), 28 Ill. 2d 77, 190 N.E.2d 819), we believe the above comments

were error. We initially note that the State's case was not uncontradicted because Robert Madoch testified for the defense that one of the officers wanted to provoke Burton. Moreover, the statement during closing argument, "even though the defendant never gets on the stand" clearly focused the jury's attention on defendants' failure to testify. The import of this comment was reinforced by the assistant State's Attorney's earlier comments concerning the fact that defendants would testify and the fact that testimony was elicited concerning the fact that Burton had testified at an earlier proceeding. Clearly such comments were error.

■■ Defendants also argue that their right to a fair trial was further infringed by the assistant State's Attorney's references to evidence not produced at trial. These allegedly prejudicial comments occurred during the cross-examination of Mr. Madoch, the official court reporter during defendants' first trial. The assistant State's Attorney began her cross-examination of the court reporter by eliciting testimony from Mr. Madoch indicating that prior to the instant trial Mr. Madoch had transcribed the testimony of Officers Curd and Dougherty, of the defendants, and of Caroline Brown, a defense witness. Further questioning of Mr. Madoch elicited testimony that he had also transcribed closing arguments and discussions concerning motions in the first trial. The assistant State's Attorney then commented as follows:

"And so you heard more even than the testimony, the questions and answers and those things, you heard all the arguments of Counsel that had previously been had, that took place.

\* \* \*

"And so you know every detail of that particular case of the facts, those facts that we are able to get in front of the jury, those facts that we can't get in a jury, these things said outside of Court, any comment that we made don't you Mr. Madoch?"

We believe the above comments to be highly improper. Counsel must confine himself or herself to facts introduced into evidence (*People v. Vasquez* (1972), 8 Ill. App. 3d 679, 291 N.E.2d 5), and it is improper to refer to evidence which has been excluded. (*People v. Hovanec* (1976), 40 Ill. App. 3d 15, 351 N.E.2d 402.) Whether intentional or not, counsel's comments clearly indicate that there was certain evidence favorable to the State that the jury was not allowed to hear. Such comments are highly improper.

The State argues that certain of the comments were not objected to in the trial court and that at most the comments were harmless error. We have considered the evidence and believe that on the face of the record the defendants did not receive a fair trial. The errors were neither harmless nor are defendants, due to their failure to object, precluded from raising them in this appeal. (See *People v. Vasquez* (1972), 8 Ill.

App. 3d 679, 291 N.E.2d 5.) We thus reverse the judgments and remand the cause for a new trial. Having so ruled, we see no need to consider defendants' last contention of error concerning the jury instruction.

Judgments reversed; cause remanded.

O'CONNOR and BUCKLEY, JJ., concur.