THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WAYNE SCOTT, Defendant-Appellant.

First District (5th Division)   No. 80—1919

Opinion filed August 13, 1982.

Ralph Ruebner, Fe Fernandez, and Karen Daniel, all of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Lester M. Joseph, Kim R. Kardas, and David A. Stoioff, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MEJDA delivered the opinion of the court:

Defendant was charged by information with attempted murder, armed robbery, burglary, home invasion, aggravated battery and armed violence. The armed violence count was not submitted to the jury. Defendant was found guilty of home invasion, aggravated battery and armed robbery. He was not found guilty of attempted murder and burglary. Defendant was sentenced 28 years for armed robbery, 28 years for home invasion and 7 years for aggravated battery to run concurrently. Defendant appeals. We reverse the conviction for home invasion; we reverse and remand the convictions for armed robbery and for aggravated battery.

Although defendant raises nine issues on appeal, our disposition of this case requires that we address only four of them: (1) whether defendant was proved guilty beyond a reasonable doubt due to the allegedly incredible testimony of the complainant, the only eyewitness; (2) whether defendant was proved guilty beyond a reasonable doubt of home invasion where the complainant testified he had given him permission to enter his room; (3) whether the arresting officer's testimony as to defendant's assault of another individual deprived defendant of a fair trial; and (4) whether the prosecutor's remarks during closing argument were improper, depriving defendant of a fair trial.

An abbreviated statement of facts follows. Additional facts necessary to the resolution of the issues addressed will be given as required.

The following evidence was adduced at trial. At approximately 4 a.m. on November 3, 1979, the victim was reading a newspaper in his room at the YMCA hotel on 37th and Wabash. A man knocked on his door, identified himself as Scott, and asked to be let into the room. The victim knew Scott who was the desk clerk at the "Y" where he lived. He unchained the door and let in two men. Once inside the room, one of the men asked to see the victim's gun. The victim refused. One of the assailants struck him across his head, fingers and wrists with a nightstick and the gun fell to the floor. The victim fell and struck his head on a dresser drawer. The two assailants took the gun, a flashlight and $32 and fled. The victim went downstairs to call the police but two policemen were already entering the building. The victim identified Scott, the desk clerk and the defendant here, as one of the men who attacked him. Defendant denied being in the victim's room. Defendant pulled out a baseball bat and stated that was the only club he had in his possession. The police arrested defendant and one of them went behind the desk and found a nightstick propped up against the counter. The victim testified that this nightstick was just like the one used to beat him. Traces of human blood were found on the nightstick.

The arresting officer also testified that he understood the victim to say that $2 had been taken by the assailants. The victim, however, denied telling any police officer that $2 had been taken. After the attack the victim was found to be suffering from lacerations of the skull, swollen hands, and fractures in the forearm bones.

Defendant's wife was called to testify on defendant's behalf. She stated that on November 3, 1979, her husband was working two jobs, one as a desk clerk at the YMCA and another at a gas station. He worked at the "Y" from midnight to 8 a.m. On the morning of November 3, 1979, she called her husband at approximately 2:45 a.m. and talked with him for over an hour. At approximately 4:20 or 4:25 a.m. another call came over the switchboard at the "Y" and her husband put her on hold for approximately five minutes. After concluding the telephone conversation Mrs. Scott dressed and went to the "Y." Following Mrs. Scott's testimony the defense rested.

The jury found defendant guilty of home invasion, aggravated battery and armed robbery and not guilty of attempted murder and burglary. Defendant appeals.

OPINION

Defendant asserts that he was not proved guilty beyond a reasonable doubt because the complainant was not in full possession of his

faculties and because his testimony was based on assumptions, contained inconsistencies, and was contrary to human experience.

■■ A court of review will not set aside a jury's verdict unless the evidence presented at trial is so improbable as to raise a reasonable doubt of guilt. (*People v. Zuniga* (1973), 53 Ill. 2d 550, 293 N.E.2d 595.) However, the burden is always upon the State to prove defendant guilty beyond a reasonable doubt and a judgment of conviction can be sustained only on credible evidence which removes all reasonable doubt of defendant's guilt. (*People v. Dawson* (1961), 22 Ill. 2d 260, 174 N.E.2d 817.) Where the State's evidence is improbable, unconvincing and contrary to human experience, a reviewing court will not hesitate to reverse it. *Dawson.*

■■ ■ Defendant cites no authority supporting his argument that his conviction should be reversed because the complainant was senile or not in possession of his faculties. No challenge to the complainant's competency to testify was made at trial and no separate hearing was held on that issue. It is well established that if a witness has the capacity to observe, recollect and communicate, he is competent (*People v. Nash* (1966), 36 Ill. 2d 275, 222 N.E.2d 473, *cert. denied* (1967), 389 U.S. 906, 19 L. Ed. 2d 223, 88 S. Ct. 222), and a feebleminded person possessing these capabilities may be competent to testify. (*People v. O'Neal* (1977), 50 Ill. App. 3d 900, 365 N.E.2d 1333.) The record indicates that although the complainant's testimony was at times unresponsive and confusing in response to questions asked of him, he had the capacity to observe, recollect and communicate. Thus, he was competent to testify and any inconsistencies in his testimony merely affected his credibility and the weight to be accorded his testimony. *People v. Lindsay* (1978), 67 Ill. App. 3d 638, 384 N.E.2d 793.

■■ Defendant also relies heavily on *Dawson* in support of his argument that complainant's version of the events was improbable and contrary to human experience. *Dawson* is distinguishable in part because the defendant there was a police officer whose good character was attested to at trial and who testified in his own defense that he had broken up a crap game in which one of the complaining witnesses had been involved and that he had never taken any of that witness' money. Defendant there had also had "words" previous to the alleged incident with the other complaining witness. None of the other persons present at the time of the alleged incident testified at trial. The supreme court found it unbelievable that this police officer would rob people who knew him, threaten to call police when he himself was a policeman, then return most of the money and then simply go back to the hotel bar from where he came. *Dawson* cites other examples of

such improbable testimony: testimony of the complaining witness that the five men who took his wallet at gunpoint voluntarily accompanied the witness to his home upon the witness' promise to get them more money (*People v. Coulson* (1958), 13 Ill. 2d 290, 149 N.E.2d 96), testimony of the complaining witness that the defendant after robbing her and finding she had no money gave her his name and telephone number (*People v. Buchholz* (1936), 363 Ill. 270, 2 N.E.2d 80), and testimony of the complainant that after a multiple rape attack she and the defendants went to several taverns together (*People v. O'Connor* (1952), 412 Ill. 304, 106 N.E.2d 176). However, the improbability of the complainant's testimony in these cases implicitly casts doubt upon whether a crime was committed at all as opposed to who committed it. It is not in dispute that the complainant in the instant case was beaten by someone and robbed. The material fact in question here is who did it. The pivotal factor in evaluating identification testimony is whether the witness had an opportunity to view the offender under adequate conditions. (*People v. Reed* (1980), 84 Ill. App. 3d 1030, 405 N.E.2d 1065.) In the instant case complainant had an unobstructed view of defendant's unmasked face. Further, complainant had known defendant for six months prior to the incident. A positive identification by a single witness with ample opportunity to observe is sufficient to support a conviction. *People v. Clarke* (1971), 50 Ill. 2d 104, 277 N.E.2d 866.

Defendant next contends he was not proved guilty beyond a reasonable doubt of home invasion because complainant testified that he gave defendant permission to enter his room at the YMCA. The offense of home invasion (Ill. Rev. Stat. 1979, ch. 38, par. 12—11(a)) is defined as follows:

"A person who is not a peace officer acting in the line of duty commits home invasion when *without authority he or she knowingly enters* the dwelling place of another when he or she knows or has reason to know that one or more persons is present and

(1) While armed with a dangerous weapon uses force or threatens the imminent use of force upon any person or persons within such dwelling place whether or not injury occurs, or

(2) Intentionally causes any injury to any person or persons within such dwelling place." (Emphasis added.)

Defendant argues that this statute requires an unauthorized entry to be proved as an element of the offense. The State counters that defendant's authority to enter was pedicated on the expectation of

civil conduct and not on defendant's obvious intent to beat and rob complainant. Consequently, defendant's entrance was procured by deceptive means and therefore unauthorized.

The first element of the crime of home invasion is entry of a dwelling place of another without authority. (*People v. Hert* (1981), 95 Ill. App. 3d 871, 420 N.E.2d 813; *People v. Pettus* (1980), 84 Ill. App. 3d 390, 405 N.E.2d 489.) The offense makes criminal certain well-defined conduct: an unauthorized entry of a dwelling for the purpose of threatening or using force. (*People v. Medreno* (1981), 99 Ill. App. 3d 449, 425 N.E.2d 588.) The language "without authority" found in the home invasion provision has enjoyed but limited discussion in previous cases. In *Pettus* the court considered whether the informations charging defendant with the offense were totally defective because of their failure to include an allegation of "without authority." The court held they were fatally defective commenting that without such an allegation "*** one is left only to speculate as to the status of the defendant, whether he be an invitee, or has entered the premises by error or in some legal capacity. If any of the latter be true, then the offense would become some form of aggravated assault or battery." (84 Ill. App. 3d 390, 393, 405 N.E.2d 489, 492.) This statement implies of course that usually an invitee could not commit the offense of home invasion.

The State, however, urges us to adopt the reasoning found in *People v. Fisher* (1980), 83 Ill. App. 3d 619, 404 N.E.2d 859, which addresses the issue of vitiated consent within the context of the burglary statute. The burglary statute (Ill. Rev. Stat. 1979, ch. 38, par. 19—1(a)) provides in pertinent part:

> "A person commits burglary when without authority he knowingly enters or without authority remains within a building *** with intent to commit therein a felony or theft."

In *Fisher* defendants contended that they were not proved guilty beyond a reasonable doubt of burglary because they had been given permission to enter the victim's apartment. In sustaining the convictions the court held that the defendants were given limited authority to enter for the purpose of a social visit. The court found that they entered with felonious intent and that intent vitiated any consent given. Hence they entered without authority.

Although the reasoning of *Fisher* might be persuasive in another factual setting, it is not persuasive here. The *Fisher* court placed heavy reliance on the fact that the defendants there had entered the apartment with felonious intent, albeit with the consent of its occupants. Here, however, defendant was specifically acquitted of

the offense of burglary by the jury. To find defendant guilty of home invasion utilizing the *Fisher* rationale would require us to say that defendant had the intent to beat the complainant or steal from him at the time he gained entry to his apartment. This would be tantamount to finding him guilty of burglary, an offense of which he was acquitted by the jury. This we will not do. Thus, we reverse defendant's conviction of home invasion because unauthorized entry was not proved beyond a reasonable doubt.

Defendant also contends that Officer Blahusiak's testimony at trial and the improper remarks of the prosecutor during closing argument were prejudicial denying him a fair trial.

During trial Officer Blahusiak, the arresting officer, testified to the events leading up to defendant's arrest. He testified that he went to the YMCA with Kevin Smith. When they entered the lobby they found complainant who was covered with blood talking with defendant. Blahusiak testified that defendant "threatened Mr. Smith with the baseball bat and threatened to kill him." Defendant asserts that the quoted testimony was improper because it is evidence of other crimes, inadmissible unless it tends to prove motive, intent, identity, modus operandi or absence of mistake, none of which apply here. Defendant argues this testimony is particularly prejudicial in light of the prosecutor's remarks in closing argument that "[e]verything else was kept out as to why Kevin Smith called the police, but if you use your common sense, you can figure it out." The State counters that this testimony was not intended to point out any unrelated criminal behavior, but rather to give the jury a complete and accurate report of the events which preceded defendant's arrest. The State also argues that this was an excited utterance, and in any event any error was cured because defense objections to these remarks were sustained.

■ Generally evidence of other crimes in inadmissible as proof of guilt for the offense charged. (*People v. Harris* (1980), 91 Ill. App. 3d 112, 414 N.E.2d 755.) However, such evidence is admissible if relevant for any purpose other than to show propensity to commit a crime. (*People v. Hoppock* (1981), 98 Ill. App. 3d 58, 423 N.E.2d 1351.) Evidence of other crimes is also admissible, as the State contends here, when relevant to police investigation of the offense at issue where such investigatory procedures involved an integral part of the narrative of the defendant's arrest. (*People v. Davis* (1981), 93 Ill. App. 3d 187, 416 N.E.2d 1179.) However, unnecessary details such as defendant's threats to the victim of a subsequent crime, have been held prejudicial and inadmissible. (*People v. Diaz* (1979), 78 Ill. App.

3d 277, 397 N.E.2d 148; see also *People v. McKibbins* (1981), 100 Ill. App. 3d 787, 427 N.E.2d 238, *Davis* and collected cases cited therein.) Here the arresting officer had already stated that a routine assignment directed him to meet a citizen at a certain street corner, that he and his partner went to that street corner and were soon approached by Kevin Smith. After talking with Smith they proceeded to the YMCA. As the presence of the police at the YMCA had been explained, the police officer's testimony regarding defendant's threats was an unnecessary detail and was properly excluded.

Defendant also contends that the prosecutor improperly commented in closing argument that "[e]verything else was kept out as to why Kevin Smith called the police, but if you use your common sense, you can figure it out."

In closing argument counsel must confine himself to facts introduced into evidence; it is improper to refer to evidence which has been excluded. (*People v. Burton* (1978), 63 Ill. App. 3d 915, 380 N.E.2d 929.) Thus, it has been held improper for a prosecutor to comment during closing argument in an armed robbery trial that the jury could infer the content of the statements excluded under the rules of evidence. (*People v. Connors* (1980), 82 Ill. App. 3d 312, 402 N.E.2d 773.) The suggestion of such an open-ended inference was highly improper. (*Connors.*) Thus, the prosecutor's remarks in closing argument here were improper.

The State further contends, however, that no prejudice arose from either of these errors, as defendant's objections to both were sustained and because the evidence in the instant case was overwhelming. An error in regard to the admission of unrelated misconduct or crimes is commonly deemed to be cured where defense objections have been sustained during the course of trial and where the jury is instructed to disregard the matter. (*People v. Burnett* (1979), 74 Ill. App. 3d 990, 394 N.E.2d 456.) Such evidence, however, may be so highly inflammatory that such rulings may fail to effect a cure. (*People v. Deal* (1934), 357 Ill. 634, 192 N.E. 649; *People v. Preston* (1978), 60 Ill. App. 3d 162, 376 N.E.2d 299, *aff'd* (1979), 76 Ill. 2d 274, 391 N.E.2d 359; *Burnett.*) Similarly, the prosecutor's comment on excluded evidence may not be reversible where there is overwhelming evidence of defendant's guilt and the court concludes that such comment was not a material factor in the defendant's conviction. *People v. Bracy* (1973), 14 Ill. App. 3d 495, 302 N.E.2d 747.

The evidence against defendant here was complainant's identification as well as defendant's possession of a nightstick which could have been but was not conclusively proved to be the weapon used in the

attack. In the instant case complainant's testimony appeared confused at times. Thus, while the identification of a single credible witness is sufficient to convict, defendant's point is well taken that these errors were highly prejudicial in light of the at-times unresponsive and confusing testimony of the only eyewitness. Further, although neither of these errors alone might be sufficiently prejudicial to constitute reversible error, they may be sufficiently prejudicial when considered in combination as each complicates and compounds the error. *People v. Connors* (1980), 82 Ill. App. 3d 312, 402 N.E.2d 773.

As we cannot say that these errors were not a material factor in defendant's conviction, they constitute reversible error. (*People v. Weathers* (1975), 62 Ill. 2d 114, 338 N.E.2d 880; *Connors*.) In light of our holding we find it unnecessary to address the remaining issues raised by defendant.

Accordingly, the conviction for home invasion is reversed; the convictions for armed robbery and aggravated battery are reversed and remanded for further proceedings.

Reversed in part; reversed and remanded in part.

LORENZ and WILSON, JJ., concur.