THIRD DIVISION

June 04, 1997

No. 1-95-3422

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

THOMAS ALKSNIS,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

93 CR 9143

Honorable

Daniel J. Kelley,

Judge Presiding.

JUSTICE CAHILL delivered the opinion of the court:

Thomas Alksnis was convicted of residential burglary after a jury trial and sentenced to 20 years in prison.  He raises multiple issues on appeal, from jury selection to sentencing.  We affirm.

Before trial, defendant challenged several jurors for cause.  He challenged prospective juror Leslie Hyland because she and her father had been victims of crimes.  The challenge was denied.  Defendant's counsel then used a peremptory challenge to excuse Hyland.  Subsequently, defendant told his attorney he did not want to use his last peremptory challenge on Hyland.  Defendant's counsel moved to withdraw that peremptory challenge.  The trial court refused.

With his peremptory challenges exhausted, defendant challenged Carol Schweig because she had twice been a victim of residential burglary for which no one was apprehended.  When asked if she could put those incidents aside and view this case with an open mind, she said "I don't know" and "I would hope so."  At defendant's request, the court brought Schweig into chambers for additional inquiry.  She said that although she was angry about the burglaries,  she could give defendant a fair trial.  The trial court rejected the challenge for cause.

Just before trial, the prosecutor entered the courtroom with a cart containing files relating to defendant, three relating to other cases.  Defendant claimed this cart was three paces from the jury box and that two alternate jurors walked by it.  The prosecutor claimed he saw none of the jurors look at the cart.  The court determined that only one of the files was visible and asked the prosecutor to cover it.  Noting that defendant had not been prejudiced, the trial court continued with the trial.  

Frank Kasluga testified at trial that he returned home from shopping on April 7, 1993, to find one of the panes of glass in his side door broken and glass on the floor.  In his bedroom he saw that a drawer had been pulled out and its contents spilled.  

Scott Manchester and Don Bannon testified that they were at Manchester's house across the street from Kasluga's house on April 7, 1993, when several children came in and said someone was across the street breaking into Kasluga's house.  Manchester and Bannon ran outside and saw a man wearing faded blue jeans, a black jacket and a red baseball cap approaching the side door of Kasluga's house.  They saw him take off his cap, place it against the window on the door, and break the window.  Then he put his arm through the broken window, opened the side door and entered the house.  Manchester went inside and called 911.  A little later they saw the man run out the front door of Kasluga's house.  Manchester and Bannon identified defendant in a police station lineup, and again at trial as the man who ran out of Kasluga's house. 

Manchester further testified that, after watching defendant exit Kasluga's house, he chased him down an alley and into a yard.  While defendant was in the yard, Manchester told him to freeze.  Defendant turned toward Manchester and approached him, saying, "Don't come by me.  I'm going to let you have it."  Defendant then sprayed mace at Manchester, who covered his face as defendant ran past him.  Manchester resumed the chase through another yard, into a park and across several baseball fields until he lost sight of defendant.  

Officer Andrew Wallace testified that he responded to a call of a burglary in progress at Kasluga's address.  While searching the area, Wallace saw defendant come out from under some stairs.  Wallace told him to stay where he was, but defendant fled.  Other officers soon found him hiding in a dollhouse in another backyard.  Defendant was arrested and read his 
Miranda
 warnings.  Defendant then stated that he had been in the area shopping and that his car had broken down on the way to his father's house.  He could not give the officers his father's address.    

Officer Robert Anderson also testified that he responded to a call of a burglary in progress at Kasluga's house.  He spoke to two teen-agers, who gave him a description of some 14 to 16 year olds, which he subsequently broadcast.  Five minutes later, Manchester arrived and gave Anderson his description of the man he chased:  a male white, 30 to 32 years old, 6 feet tall, 155 pounds, wearing a black jacket and blue jeans, with acne on his face.  Anderson then broadcast that description.  He entered Kasluga's house and found glass on the floor and a drawer turned upside down in the bedroom.  The State rested.

Defendant introduced several close-up pictures of himself taken by the police on the day of his arrest.  He then asked that he be allowed to show his face to the jury to demonstrate the condition of his face.  The trial court ruled that a display of defendant's face to the jury would be testimonial and subject to cross-examination.  Later at a hearing on defendant's motion for a new trial, the court ruled that the condition of defendant's face 28 months after the incident was not relevant.  

Before trial, the State sought to bar admission of a police radio tape with descriptions of the burglary suspect.  No transcript of the tape appears in the record, but defendant claims on appeal that the tape contains different descriptions of the suspect.  The trial court admitted the tape to show conflicting descriptions of the perpetrator.  After Officer Anderson testified, the State renewed its motion since Officer Anderson admitted he broadcast two different descriptions.  The defense then asked that the tape be played, not only to show that different descriptions had been given, but also to impeach Manchester's testimony.  The court limited the playing of the tape to the parts indicating that two different descriptions of the perpetrator were broadcast.

In closing argument, while discussing Manchester's identification of defendant, the prosecutor told the jury that "when you get as close as Scott Manchester got to his face[,] you can see acne on his face."  Defendant claims that the prosecutor was standing close to defendant and looking at his face as he said this.  

Defendant tendered an instruction for the lesser included offense of criminal trespass, which the court refused.  The jury returned a verdict of guilty.

Defendant's motion for a new trial was denied.

At the sentencing hearing, the court received a presentence report and heard testimony from Detective Joseph Kirchens and Officer William Sotak about two pending cases: an attempted burglary charge and a residential burglary charge.  The court said it would not consider the attempted burglary offense.  After considering the presentence report and the residential burglary charge along with mitigation, the court sentenced defendant to 20 years in prison.

Defendant first argues on appeal that the trial court erred in holding that a display of defendant's face to the jury for demonstrative purposes would be testimonial and a waiver of defendant's fifth amendment right against self-incrimination.  At trial, the court said: 

"[I]f the defendant were to get up on today's date about two and a half years after the date of the offense and display his face to the members of the jury to show that he does not have any acne or pock marks today would be testimonial in nature and he would be subject to cross examination as to how his face looked back on the date of the incident."

In denying defendant's post-trial motion, the court said "[a]s to the display of the defendant's face, the threshold issue is that of relevance.  I don't believe it was relevant to have the jurors view what his face appeared like two years after the alleged incident."   Courts that have addressed whether a defendant's display of a physical characteristic constitutes a waiver of his fifth amendment rights have found that if the prosecution may compel a defendant to display a physical characteristic on the ground that it is nontestimonial, the defendant's decision to present such evidence is not a waiver of his rights against self-incrimination.  See, 
e.g.
, 
United States v. Bay
, 748 F.2d 1344 (9th Cir. 1984), 
modified on reh'g
, 762 F.2d 1314 (9th Cir. 1985); 
State v. Gaines
, No. 96-0380 (Ariz. App. March 13, 1997); 
People v. Shields
, 81 A.D.2d 870, 438 N.Y.S. 2d 885 (1981); 
State v. Tillet
, 351 So. 2d 1153 (La. 1977).  However, the traditional law of real or demonstrative evidence still applies to a court's decision to allow the display.  
People v. Ward
, 193 Ill. App. 3d 677, 681, 550 N.E.2d 576 (1990).  The party offering the evidence must establish relevancy.  
Ward
, 193 Ill. App. 3d at 682. The trial court questioned the relevancy of the condition of defendant's face 28 months after the offense.  Defendant did not make an offer of proof to support his contention that his face was in the same condition at trial as it had been 28 months earlier.  Nor did he make an offer of proof that his facial condition at trial would confirm the appearance of his face in the photographs taken of him on the day of the crime.

This case is similar to 
United States v. Bay
, 748 F.2d 1344 (9th Cir. 1984), 
modified on reh'g
, 762 F.2d 1314 (9th Cir. 1985).  In 
Bay
, the court held that a defendant's display of tattoos was non-testimonial and would not subject the defendant to cross-examination.  In a modified decision on request for rehearing, the court addressed the prosecution's argument that there had been no foundation to establish that the defendant had tattoos at the time of the crime.  The court observed that if a foundation had been laid showing that the tattoos were on the defendant's hands at the time of the robberies, those physical characteristics would have been admissible without subjecting the defendant to cross-examination.  
Bay
, 762 F.2d at 1315-17.  

The Appellate Court of Massachusetts addressed this issue when a defendant was denied the opportunity to display a tattoo on his hand at trial 11 months after the offense.  The court reasoned:

"If we should take the view that the hand could supply its own foundation and constitute evidence of the condition of the hand at the time of the robbery, then the display of the hand would clearly have had a testimonial component and constituted an election by the defendant to testify."  
Commonwealth v. Happnie
, 3 Mass. App. Ct. 193, 198-99, 326 N.E. 2d 25, 29 (1975).  

See also
 
People v. Wong
, 35 Cal. App. 3d 812, 835, 111 Cal. Rptr. 314, 330 (1973).

The rule of evidence explained in 
Happnie
 applies here: if we take the view that the defendant's face supplies its own foundation and is evidence of the condition of his face at the time of the crime, then the display of his face has a testimonial component and is subject to cross-examination.  The alternative to cross- examination is an offer of proof of relevancy by some other means.  This defendant did not do.  

Defendant next argues that the trial court erred when it barred playing the full police tape.  Defendant sought to use the complete tape to show that inconsistent descriptions of the perpetrator had been given and that other material impeached Manchester's testimony.  He was allowed to use the tape for the former, over the State's objection.  

Whether to admit evidence is a decision within the sound discretion of the trial court, and a reviewing court will not overturn that decision absent a clear abuse of discretion.  
Gill v. Foster
, 157 Ill. 2d 304, 312-13, 626 N.E.2d 190 (1993).  

The tape is not included in the record on appeal.  The only indications we have of statements by Manchester are the parties' different assertions.  The responsibility for properly preserving the record rests with the appellant, and doubts raised by an incomplete record are resolved against him.  
People v. Hartfield
, 137 Ill. App. 3d 679, 484 N.E.2d 1136 (1985).  

Defendant next argues that the trial court erred when it refused to tender a lesser included offense instruction on criminal trespass to residence.  Defendant claims he was entitled to such an instruction because the prosecution failed to prove defendant possessed the requisite specific intent to commit a theft at the time of his unlawful entry into the residence.  Defendant argues that since nothing was taken from Kasluga's house, the jury could have found a lack of intent to commit a theft.

Defendants are entitled to an instruction on a lesser included offense when the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater.  
People v. 
Cramer
, 85 Ill. 2d 92, 95, 421 N.E.2d 189 (1981), quoting 
Keeble v. United States
, 412 U.S. 205, 208, 36 L. Ed. 2d 844, 847, 93 S. Ct. 1993, 1995 (1973).

A lesser included offense is "established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged."  720 ILCS 5/2-9(a) (West 1994).  The State does not dispute that criminal trespass is a lesser included offense of residential burglary.  But the existence of a lesser included offense does not automatically require a jury instruction.  
People v. Novak
, 163 Ill. 2d 93, 108, 643 N.E.2d 762 (1994).  A defendant is not entitled to an instruction on a lesser included offense where the two offenses involve the same issues of disputed fact.  
Novak
, 163 Ill. 2d at 108, 643 N.E.2d 762; 
Cramer
, 85 Ill. 2d at 98, citing 
Berra v. United States
, 351 U.S. 131, 100 L. Ed. 2d 1013, 76 S. Ct. 685 (1966).  In 
Sansone v. United States
, the United States Supreme Court explained:

"[A] lesser-offense charge is not proper where, on the evidence presented, the factual issues to be resolved by the jury are the same as to both the lesser and greater offenses.  [Citations.]  In other words, the lesser offense must be included within but not, on the facts of the case, be completely encompassed by the greater.  A lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense."  
Sansone v. United States
, 380 U.S. 343, 349-50, 13 L. Ed. 2d 882, 888, 85 S. Ct. 1004, 1009 (1965).

The Illinois Supreme Court followed this reasoning in 
People v. Cramer
,  85 Ill. 2d at 98.  In 
Cramer
, the defendant was charged with criminal theft of a truck.  The defendant admitted that he took the truck.  The court found that there was sufficient evidence to support a conviction of theft, a Class 3 felony, although the same evidence supported an inference that the defendant did not have the requisite intent to permanently deprive the owner of the use and benefit of the truck.  The defendant asked for a lesser included offense instruction under the Illinois Vehicle Code (Ill. Rev. Stat. 1977, ch. 951/2, par. 4-103(a)), a Class 4 felony.  This offense does not require proof that the defendant intend to deprive the owner of the use and benefit of the truck.  The defendant argued that because the facts supported an inference of more than one mental state, he was entitled to the instruction.  
Cramer
, 85 Ill. 2d at 94-95.  The trial court refused the instruction, and the Illinois Supreme Court affirmed, reasoning that a defendant was not entitled to a lesser included offense instruction where the instruction tendered by the defendant "would have allowed the jury to convict defendant  *** on the same facts necessary to convict him of theft."  
Cramer
, 85 Ill. 2d at 100.

Here, as in 
Cramer
, the jury could infer that defendant had the requisite intent to commit theft and yet, under the instructions tendered by defendant, return a verdict of guilty on criminal trespass rather than residential burglary.  If the prosecution proved residential burglary, the jury would still be able to render a verdict of guilty on criminal trespass based on the same factual determinations that would support the greater offense of residential burglary.  
Cramer
 makes clear that, in these limited circumstances, the prosecution has discretion to choose the statute under which it will proceed, and defendant is not entitled to an instruction on the lesser included offense.  The trial court did not err.

Defendant next argues that the trial court erred when it empaneled juror Schweig.  He alleges that she was a prejudicial juror that he was forced to accept when the court refused to allow him to retract the peremptory challenge exercised on Leslie Hyland. A court of review will not reverse a decision overruling challenges for cause to jurors, unless it is shown that an objectionable juror is forced upon defendant after he exhausts his peremptory challenges.  
People v. Washington
, 104 Ill. App. 3d 386, 432 N.E.2d 1020 (1982).  An "objectionable juror" is "a juror who should have been dismissed for cause -- one who would prejudice the case."  
People v. Reid
, 272 Ill. App. 3d 301, 309, 649 N.E. 2d 593 (1995), quoting 
Flynn v. Edmonds
, 236 Ill. App. 3d 770, 782, 602 N.E.2d 880 (1992).

After stating that her home had twice been burglarized, the following exchange took place between Schweig and the trial court:

"Q. Is there anything about those incidents that you think would affect your ability to be fair and impartial?

A. I don't know.  I lost everything so I don't know.

Q. Do you feel you could put that aside and listen to the evidence in this case with an open mind?

A. I don't know.

* * *

Q. Do you understand that Mr. Alksnis, as he sits there, is presumed to be innocent of the charge against him, do you understand that?

A. Yes.

Q. And would you hold it against Mr. Alksnis that your home was burglarized two times?

A. No.

* * *

Q. Will you listen to the evidence in this case with an open mind?

A. I would hope so.

Q. Do you feel that you can base any verdict that you reach on the evidence and the law that I give you that applies to this case?

A. Yes.

Q. And again I'll ask you do you think you can put--Do you believe you can give Mr. Alksnis a fair trial?

A. I would have to say yes."

After defendant attempted to have her removed for cause, the court agreed to question Schweig further in chambers since defendant had used all his peremptory challenges.  The following exchange then took place:

"Q. Do you feel you could give Mr. Alksnis a fair trial?

A. I feel I could do anything I guess.  I have to say yes but I'm still angry about this because I have never been able to replace anything.

Q. You do feel you could put that aside?

A. I think so."

Defense counsel then asked her the following:

"Q. As you know this is a burglary case and my client is charged with a residential burglary and I'll just ask you in the interest of fairness do you think--

A. I'm a fair person.  I feel I am."

The trial court denied defendant's challenge for cause, stating that although Schweig was angry about being victimized, she indicated she could be fair in this case.

Defendant urges us to follow 
People v. Johnson
, 215 Ill. App. 3d 713, 575 N.E.2d 1247 (1991).  There we held that the trial court erred when it failed to dismiss for cause several jurors who were unable to state their unequivocal impartiality because all were victims, or had known victims, of criminal activity.  But we have also held that a juror's lack of "meticulous preciseness" or "state of uncertainty" does not necessarily disqualify a juror.  
E.g.
,
 
People v. Martin
, 271 Ill. App. 3d 346, 354, 648 N.E.2d 992 (1995); 
People v. Barragan
, 266 Ill. App. 3d 961, 975, 641 N.E.2d 535 (1993).  In 
Martin
, we upheld a trial court's refusal to strike a juror when the juror responded "I don't think so" when asked if there was anything about the case that would prevent him from being fair and impartial.  When questioned further, he unequivocally stated he could be fair and impartial.  
Martin
, 271 Ill. App. 3d at 353.  In 
Barragan
, the following exchange took place
:

"Q. Do you feel that you could listen to all the evidence before you made up your mind?

A. It would be kind of tough.

Q. Do you think you could not be fair to either the State or the defense?

A. It would be hard."  
Barragan
, 266 Ill. App. 3d at 975.

When questioned further, the juror agreed that the State must prove defendant guilty, that he would follow the law as given by the court, and that he would not let prejudice or sympathy influence his decision.  
Barragan
, 266 Ill. App. 3d at 975.  Considering the entire dialogue between the judge and juror, we held that the trial court did not abuse its discretion when it refused to excuse the juror for cause.  

Here, Schweig, after making equivocal statements, said she felt she could be fair in this case and that she could give defendant a fair trial.  We cannot find an abuse of discretion  on this record.

Defendant also alleges that Schweig expressed discomfort because of recent back surgery.  But he does not explain how that would affect her ability to be a fair and impartial juror. 

Defendant next argues that the trial judge erred when he failed to poll the jurors about what they saw when the prosecution's file cart with files relating to other cases involving defendant was parked close to the jury box.  

Defendant relies on 
People v. Bass
, 220 Ill. App. 3d 230, 580 N.E. 2d 1274 (1991).  In 
Bass
, the defendant objected to the fact that the State's cart was facing the jury.  The cart contained the names of codefendants not on trial, and the words "Black Gangster Disciples."  We found that placement of these items within possible viewing range of the jurors was error.  But we also found the error was harmless, in part, because there was no showing that the jurors saw the items or that defendant was prejudiced.  
Bass
, 220 Ill. App. 3d 251, 580 N.E.2d 1274.

Defendant has failed to show that he was prejudiced by the prosecutor's actions in this case.  The record reveals that one folder was visible, but there is no evidence that a juror saw the folder before the court told the prosecutor to turn it over.  Defendant did not ask that the jurors be polled or show that a juror had seen and been prejudiced by the folder.  

Defendant next argues that the prosecutor's improper statements and actions during closing argument substantially prejudiced him.  

Counsel are allowed latitude in their closing and rebuttal arguments, and the trial court's determination will not be reversed absent a clear abuse of discretion.  
People v. Cisewski
, 118 Ill. 2d 163, 175-76, 514 N.E.2d 970 (1987). Counsel must confine their remarks to facts in evidence.  
People v. Scott
, 108 Ill. App. 3d 607, 614, 439 N.E.2d 130 (1982); 
People v. Burton
, 63 Ill. App. 3d 915, 918, 380 N.E.2d 929 (1978).  Opinions expressed by the prosecutor about intuitive judgments within the province of the jury are improper.  
People v. Roach
, 213 Ill. App. 3d 119, 124, 571 N.E.2d 515 (1991).  Improper remarks in closing argument are reversible error where they result in substantial prejudice or where the statements serve no purpose except to inflame the jury.  
People v. Tiller
,  94 Ill. 2d 303, 321, 447 N.E.2d 174 (1982); 
People v. Baptist
, 76 Ill. 2d 19, 29, 389 N.E.2d 1200 (1979).  

Defendant claims the prosecutor improperly recounted Manchester's testimony regarding acne on defendant's face when that testimony was controverted.  Defendant cites 
People v. 
Burton
 for the proposition that the prosecutor should not have referred to the controverted evidence.  In 
Burton
, the prosecutor falsely characterized the State's evidence about provocation as uncontroverted.  Because the evidence was controverted, and because other improper comments were made, the argument was reversible error.  
Burton
, 63 Ill. App. 3d at 919.  This case is distinguishable from 
Burton
 because
 the prosecutor here did not claim that Manchester's testimony was uncontradicted.   Defendant also claims that the prosecutor approached him during closing arguments, looked at his face, and said:  "[W]hen you get as close as Scott Manchester got to his face[,] you can see acne on his face."  Defendant suggests that this statement refers to a matter not in evidence.  
Burton
, 63 Ill. App. 3d at 919.  We agree.  The trial court had previously ruled that defendant could not be allowed to display his face without cross-examination.  In light of that ruling, the prosecutor's statement implying that  defendant had acne at the time of trial was improper.  

Error is cured by sustaining an objection, admonishments and jury instructions.  
People v. Terry
, 99 Ill. 2d 508, 460 N.E.2d 746 (1984).  The trial court sustained defendant's objection to the prosecutor's statement.  Before and after closing arguments, the trial court instructed the jury that what the lawyers said in closing arguments was not evidence and should not be considered as evidence.    

Defendant next argues that the cumulative impact of the errors he points out on appeal deprived him of a fair trial.

This argument depends on a finding that more than one of the court's decisions was in error.  
People v. Albanese
, 102 Ill. 2d 54, 83, 464 N.E.2d 206 (1984).  We have found that among the eight issues raised by defendant, only one justifies a finding of error: that the prosecutor made an improper statement during closing argument, cured by a prompt objection and court instructions.  There was no cumulative error in this case.

Defendant's final argument is that the trial court relied on the unreliable testimony of Detective Kirchens and Officer Sotak at sentencing.

A trial court has wide discretion in the source and kind of evidence to be considered in sentencing.  
People v. Washington
, 127 Ill. App. 3d 365, 468 N.E.2d 1285 (1984).  Indictments and criminal conduct not prosecuted may be considered.  
People v. Jackson
, 149 Ill. 2d 540, 548, 599 N.E.2d 926 (1992).  This evidence should be subject to cross-examination and rebuttal.  
Jackson
, 149 Ill. 2d at 548.  Relevance and reliability are the important factors for evidence offered at sentencing.  See
 
People v. Richardson
, 123 Ill. 2d 322, 361, 528 N.E.2d 612 (1988); 
People v. Johnson
, 114 Ill. 2d 170, 205, 499 N.E.2d 1355 (1986).  Hearsay evidence of unprosecuted crimes is admissible in sentencing hearings if it is relevant and reliable.  
People v. Williams
, 164 Ill. 2d 1, 27, 645 N.E.2d 844 (1994).

Defendant contends that the evidence offered by Detective Kirchens and Officer Sotak regarding two unprosecuted crimes was hearsay because they read from police reports.  The record does not support the contention that they read from police reports.  

Defendant also claims that their testimony was not reliable.  Kirchens testified that, while he was investigating a different burglary, an evidence technician was called to the scene and recovered a fingerprint.  That print was identified as matching defendant's fingerprint.  Kirchens received this information from reliable police department sources during the course of an official investigation.  See 
People v. Morgan
, 112 Ill. 2d 111, 143-44, 492 N.E.2d 1303 (1986) (facts compiled during officer's official investigation held reliable for sentencing purposes).  The trial court did not abuse its discretion in relying on this information.

We need not review the reliability of Sotak's testimony because the trial court did not rely on it in sentencing.

Affirmed.

GORDON and LEAVITT, JJ., concur.