KATRINA VRZAL, a Minor, by her Next Friend, Nancy Sorcek, *et al.*, Plaintiffs-Appellants, v. CONTRACT TRANSPORTATION SYSTEMS COMPANY *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—98—4377

Opinion filed March 31, 2000.—Rehearing denied April 21, 2000.

Ambrose & Cushing, P.C., of Chicago (Thomas M. Cushing and Marilyn Martin, of counsel), for appellants.

William D. Serritella and Joann T. Angarola, both of Ross & Hardies, of Chicago, for appellees.

JUSTICE GREIMAN delivered the opinion of the court:

The jury rendered a verdict in favor of defendants. Plaintiffs allege that the trial court erred in failing to excuse a juror for cause where one of the prospective jurors expressed views, during *voir dire*, antagonistic to personal injury plaintiffs and stated that she would have difficulty being fair to the plaintiffs. However, after examining the entire record of the trial court's *voir dire*, we find that the views

expressed by the challenged juror did not prevent or impair the performance of her duties as a juror and that the interchange between the trial court, counsel and the juror indicated that she possessed the qualification to be a fair and impartial juror. For the reasons that follow, we affirm.

The facts of this case are tragic and the injuries severe and deadly. At approximately 3 a.m. on July 3, 1992, plaintiffs' motor vehicle was traveling south on Interstate 57. This highway has north/south lanes of traffic divided by a 60-foot median strip and has shoulder area on both roadsides. The vehicle occupied by plaintiff and her decedents entered the 60-foot median strip and exited onto the northbound lanes, spinning across these lanes to the far right shoulder of the northbound lanes into the path of defendants' truck cab, which was equipped with a 40-foot trailer.

The plaintiffs' theory of the case was that the operator of the truck negligently failed to keep a proper lookout and failed to control his vehicle in order to avoid a collision. After a trial that included testimony from two eyewitnesses to the incident and several expert witnesses, the jury rendered a verdict in favor of the defendants.

The trial court questioned prospective juror Lynn Harris after the plaintiffs had exhausted their peremptory challenges. Initially, Ms. Harris expressed reservations concerning her ability to be fair and impartial; however, after further discussion with the court and plaintiffs' counsel, she gave answers that allowed the court to determine that she possessed the objectivity to be a proper and conscientious juror who would afford the plaintiffs a fair and impartial trial.

Ms. Harris' first observations were that "when I sat down I really didn't think I could be a fair and impartial juror. In sitting here all day I really don't think I could be." She observed that her sympathies "when I heard the case" leaned towards the defendants. The court immediately noted that she had not heard the case to which she responded: "I understand that but I believe in tort reform based on life experience." Ms. Harris detailed these life experiences as viewing television commercials where lawyers solicit parents of children born with genetic disorders seeking medical malpractice plaintiffs; previous service as a juror 40 years earlier in a civil action against a railroad where, "it seemed to be the opinion back then that a corporation is an empty pocket, and if anything bad happens, sue the corporation"; listening to people talk; and that "[e]verybody's always sue, sue, sue." Additionally, she related that her daughter was currently a defendant in a "fender bender."

After some questions by the court she said "I'm just saying I'm not sure I could be fair and impartial. I'm not saying I couldn't be. I'm

just not sure." Then the court queried: "Do you think people who are involved in accidents resulting in personal injury have the right to their day in court?" to which she answered "yes" and made a similar statement as to defendants in such cases.

After further questions on her family, news sources and recreation, the following exchange occurred:

"Q. Ma'am, if you were chosen to serve on this jury, would you keep an open mind?

A. I would try to.

Q. You would try to be fair?

A. I would try to.

Q. And you would listen to the evidence?

A. Yes.

Q. And you would wait until you heard all of the evidence and the court's instructions with respect to the law before you reached any final opinions or conclusions?

A. Yes.

Q. And even if you may not like the law, you think the law ought to be changed, you understand that you would have a sworn obligation to follow the law whether or not you agreed therewith?

A. Yes, I understand.

Q. And you would do that?

A. Yes, I do understand."

Plaintiffs' counsel was then given an opportunity to examine Ms. Harris and the following colloquy appears in the record:

"Q. Mrs. Harris, given the answers that you gave when the judge was asking you questions, do you believe that as you sit here and before the case begins that you can be fair to both sides or do you believe that one side—that you have a rooting interest for one side over another?

A. I'm a very honest and moral person. I could listen to both sides.

Q. I understand.

A. Yes. I just had to tell you my reservations before we started.

Q. And quite frankly, that's what we're probing for because we want to find 12 people, not the 12 best people, not the 12 people who are good people, but 12 people who are right to do this job at this time. We're not talking about a different type of case but this type of case. Given the—

THE COURT: Is there a question?

MR. CUSHING, III: There is one coming, your Honor.

Q. Given what you've said about your concerns about the tort system, do you feel that you—

THE COURT: Counsel, we've been through this.

MR. CUSHING, III: Yes, your Honor, we have.

THE COURT: Okay. It's not necessary to repeat the questions of the court.

A. I just don't know that I would be the best person to be picked for the jury. I have explained that, yes, I think I could listen to both sides. I'm just not sure that given the case that I would be the best juror. Yes, I can listen to both sides and be fair. I don't know the facts and I can listen to both sides.

BY MR. CUSHING, III:

Q. Despite your determination to do everything you can to be objective in the case, do you have reservations about whether you can do this?

MR. SERRITELLA: I'm going to object.

THE COURT: Sustained.

THE WITNESS: I have to answer that?

THE COURT: No.

BY MR. CUSHING, III:

Q. Mrs. Harris, without having heard any of the evidence, I understand, but is there—you're aware of the case, roughly what it's about. Some people died in an accident and there were injuries. In the event that the plaintiff proved her case, is there a number that you have in your mind beyond which you could not go on a verdict?

A. No, there is not a number in my mind."

Thereafter, plaintiffs' counsel sought to exclude Ms. Harris for cause and the court rejected this request. In urging us to affirm this ruling, defendants stress the fact that the plaintiffs' case was, to say the least, difficult and that the jury was out less than one hour. We reject these as matters for us to consider. Both parties are entitled to a fair and impartial jury and neither the strength of the evidence presented at trial nor the length of deliberations is relevant in determining the issue.

In Illinois there are a plethora of criminal cases dealing with the objectivity and biases of prospective jurors, but a dearth of civil cases addressing those issues. In *People v. Williams*, 173 Ill. 2d 48 (1996), a prosecution for murder, a prospective juror indicated a bias against guns and their use and expressed doubts as to his ability to be fair and impartial. An examination of the entire *voir dire* of the prospective juror revealed that he believed that he " 'would hear it out' " and that he would base his consideration of the case on the law and the evidence notwithstanding his notions regarding guns. *Williams*, 173 Ill. 2d at 66-67. The issue to be resolved by the trial court is whether, considering the entire *voir dire* examination, the individual possessed the essential qualification to be a fair and impartial juror despite preconceived beliefs.

A similar result was obtained in *People v. Taylor*, 166 Ill. 2d 414 (1995), where the prospective juror stated that the death penalty should be given in certain types of cases and that he could not imagine circumstances where it should not be given within these genres of cases. *Taylor*, 166 Ill. 2d at 419-20. After continued examination by the trial court and counsel, it was apparent that he would put aside his previously stated opinion and that any vote with respect to the death penalty would be predicated on the law and the evidence. It is difficult to imagine a case more instructive to us on the proposition that competency to serve as a juror is based upon the entire *voir dire* examination rather than upon selected excerpts or statements of that person.

■ Even where a prospective juror has been a victim of a crime and responds "I don't know" or "I would hope so" to the inquiry as to whether she can view the case with an open mind, further examination can show that she can be fair and impartial and base her decisions on the law and the evidence. *People v. Alksnis*, 291 Ill. App. 3d 347 (1997).

Jurors do not come to the justice system as empty shells. They have life experiences that shape their beliefs on a myriad of issues and it is precisely that "life experience" that we seek when we impanel a jury. See *People v. Hobley*, 159 Ill. 2d 272, 297 (1994) ("An equivocal response by a prospective juror does not necessitate striking the prospective juror for cause where the prospective juror later states that he will try to disregard his bias"), citing *People v. Tipton*, 222 Ill. App. 3d 657, 664 (1991); *People v. Peeples*, 155 Ill. 2d 422, 464-66 (1993) (no abuse of discretion for failure to excuse prospective juror for cause in a murder case where the prospective juror expressed a belief that the criminal justice system ties the prosecutor's hands and that the process should be streamlined, but also stated that he could be fair to both sides); *People v. Reid*, 272 Ill. App. 3d 301, 307-08 (1995) (no abuse of discretion in refusing to excuse prospective juror for cause in a drug prosecution case where the venireman stated he would "try" not to let his experiences with persons affected by drugs affect his judgment and expressed a willingness to follow the law); *People v. Bragg*, 277 Ill. App. 3d 468, 476-77 (1995) (no abuse of discretion in refusing to exclude a prospective juror for cause who expressed a concern that the alleged robbery took place in a church, but who further stated he would do his best to be fair and would follow the law).

After continued examination of Ms. Harris, the trial court observed:

> "This lady indicated that she was a highly moral and honest person. My impression is that she is very sincere, that she in all

probability is a very honest and moral person. She expressed what reservations she felt that we should hear. I don't think I pushed her. I can understand perhaps why you don't want her on the jury, but I don't think you've given a basis to excuse her for cause. My impression and my belief is that this lady will do everything within her power to be totally fair and to be totally impartial."

■ The issue in the instant case is not unlike the issue raised in *Flynn v. Edmonds*, 236 Ill. App. 3d 770 (1992), where the trial court refused to exclude a prospective juror who expressed concern about " 'the frequency and the amount of liabilities that this country is going through right now' " but who acknowledged his ability to be fair and impartial and his intention to award any damages according to the law and the evidence. *Edmonds*, 236 Ill. App. 3d at 781-82.

Plaintiffs also argue that certain jurors were excused for cause who might have been favorable to the plaintiffs and that, in essence, the trial court exerted a double standard in exercising its discretion as to them. In examining the full record, it is apparent that those jurors who were excused for cause on motion of the defendants had clearly expressed their intentions with respect to this case. Three of the prospective jurors, in light of their experiences, expressed bias against the defendants and believed they could not be fair to the defendants or could not give the defendants a level playing field. Another had tragically lost a son in an auto accident the same year that this cause of action arose and felt that she could not hear this case with an open mind. Finally, one of the excused members of the venire, when asked if she could be fair to the defendants, stated, "I wouldn't be objective in this case at all. No way." Nothing in the record restored the trial court's confidence that these people would render a fair and impartial verdict.

In *Williams*, the court's action in excusing a prospective witness who held strong feelings against the death penalty did not affect the reviewing court's determination that the person prejudiced against guns should remain on the jury, since the excused juror made it plain that she was not able to render a verdict on the law and the evidence if the death penalty was a part of the consideration.

For the reasons expressed, we affirm the trial court.

Affirmed.

THEIS, P.J., and QUINN, J., concur.